**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMPHENOL CORPORATION,<br><br>                Petitioner,<br><br>       v.<br><br>FRACTUS, S.A.,<br><br>                Respondent. | Misc. Case No. 19-mc-160<br><br>Related to *Fractus, S.A. v. AT&T Mobility LLC, et al.*, No. 2:18-cv-00135 (JRG) (E.D. Tex.)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF AMPHENOL CORPORATION IN SUPPORT OF MOTION TO**
**QUASH SUBPOENAS TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

Maximilian A. Grant
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: max.grant@lw.com

Richard G. Frenkel (Pro hac vice to be submitted)
140 Scott Drive
Menlo Park, CA 94025
Tel: (650) 328-4600
Fax: (650) 463-2600
Email: rick.frenkel@lw.com

Bradley A. Hyde (Pro hac vice to be submitted)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290
Email: bradley.hyde@lw.com

*Attorneys for Petitioner Amphenol Corporation*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................ 5

        A.      Amphenol's Full Compliance with Fractus's Subpoena ............ 6

        B.      Fractus's January 2019 Request That Amphenol Redo Its
                Production ................................................................................. 7

        C.      The Parties Meet and Confer ..................................................... 9

        D.      Fractus Serves Three Additional Subpoenas ........................... 10

        E.      Amphenol Responds and Fractus Serves Eight More Subpoenas ...... 10

III.    LEGAL STANDARD........................................................................... 11

        A.      The Geographic Limits of Rule 45 ........................................... 11

        B.      Discovery Against Non-parties.................................................. 12

        C.      Issuing Party's Duty to Avoid Undue Burden or Expense ................. 13

IV.     ARGUMENT ....................................................................................... 15

        A.      Fractus's Subpoenas Must Be Quashed Under FRCP 45(d)(3)(ii)
                Because The Designated Corporate Representatives Do Not
                Reside, Work, or Regularly Transact Business in the District ............ 15

        B.      Fractus's Requests for Production Are Improper ................................ 17

                1.      The Second Set of Document Requests and Deposition
                        Topics Are Irrelevant, Duplicative, Unreasonably
                        Cumulative, and Unduly Burdensome ..................................... 17

                2.      Fractus Has Imposed Significant Cost on Non-party
                        Amphenol.................................................................................. 20

                3.      The Subpoenas Seek Information That Fractus Could More
                        Easily Get from Defendants..................................................... 20

        C.      Fractus Has Failed to Take Reasonable Steps to Avoid Imposing
                Undue Burden and Expense on Non-party Amphenol ....................... 21

V.      CONCLUSION..................................................................................... 24

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*ASUS Computer Int'l v. Micron Tech. Inc.*,
   No. 14-cv-00275 JST (NC), 2014 WL 12625461 (N.D. Cal. Apr. 21, 2014) .........................22

*ATLC, Ltd. v. Eastman Kodak Co.*,
   No. 6:06-CV-416-Orl-19KRS, 2006 WL 3422413 (M.D. Fla. Nov. 28, 2006) ...............14, 22

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
   163 F.R.D. 329 (N.D. Cal. 1995)..........................................................................................19

*Cusumano v. Microsoft Corp.*,
   162 F.3d 708 (1st Cir. 1998)...........................................................................................12, 13

*Dart Indus. Co. v. Westwood Chem. Co.*,
   649 F.2d 646 (9th Cir. 1980) ................................................................................................12

*DigiProtect USA Corp. v. Does*,
   No. 10-CIV-8760-PAC, 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011) ...........................12, 17

*Fears v. Wilhelmina Model Agency, Inc.*,
   No. 02-CIV-4911-HB, 2004 WL 719185 (S.D.N.Y. Apr. 1, 2004) .......................................13

*Free Stream Media Corp. v. Alphonso Inc.*,
   No. 17-CV-02107-RS (KAW), 2017 WL 6209309 (N.D. Cal. Dec. 8, 2017) .................18, 20

*Giuffre v. Maxwell*,
   221 F. Supp. 3d 472 (S.D.N.Y. 2016).................................................................................14

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006).......................................................................12, 13, 19

*Greene v. Drobocky*,
   No. 1:12-CV-00078-TBR, 2014 WL 12726539 (W.D. Ky. Aug. 27, 2014)..........................16

*Haworth, Inc. v. Herman Miller, Inc.*,
   998 F.2d 975 (Fed. Cir. 1993)...........................................................................................12, 14

*Heat & Control, Inc. v. Hester Indus., Inc.*,
   785 F.2d 1017 (Fed. Cir. 1986)............................................................................................17

*Hughes v. Twenty-First Century Fox, Inc.*,
   327 F.R.D. 55 (S.D.N.Y. 2018) ...........................................................................................13

*Ireh v. Nassau Univ. Med. Ctr.*,
   No, CV-06-09-LDW, 2008 WL 4283344 (E.D.N.Y. Sept. 17, 2008)....................................13

*Katz v. Batavia Marine & Sporting Supplies, Inc.*,
   984 F.2d 422 (Fed. Cir. 1993)..............................................................................................12

*Keebler v. Rath,*
    405 F. App'x 517 (2d Cir. 2010) ................................................................20

*Kirschner v. Klemons,*
    No. 99 Civ. 4828(RCC), 2005 WL 1214330 (S.D.N.Y. May 20, 2005) ..............................19

*Miller Marital Deduction Tr. by & through Miller v. Estate of DuBois,*
    No. 2:16-cv-01883-SB, 2018 WL 1023200 (E.D. Cal. Feb. 21, 2018) ..................18

*Miller v. Holzmann,*
    471 F. Supp. 2d 119 (D.D.C. 2007*)* ................................................................16

*Montana Res., Inc. v. ASARCO LLC,*
    No. 18-mc-434(AJN), 2019 WL 130579 (S.D.N.Y. Jan. 8, 2019) .........................18

*N'Diaye v. Metro. Life Ins. Co.,*
    No. 17-cv-4260(GBD)(BCM), 2018 WL 2316335 (S.D.N.Y. May 8, 2018) ........................21

*Nidec Corp. v. Victor Co. of Japan,*
    249 F.R.D. 575 (N.D. Cal. 2007) ................................................................21

*Nieman v. LinkedIn Corp.,*
    No. CV 12-80258 PSG, 2013 WL 685203 (N.D. Cal. Feb. 25, 2013) .........................16

*Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.,*
    No. 07 Civ. 7983 (DAB)(HBP), 2013 WL 664711 (S.D.N.Y. Feb. 25, 2013).....................18

*Perez v. Progenics Pharm., Inc.,*
    No. 10-CV-08278 (LAP), 2015 WL 4111551 (S.D.N.Y. June 24, 2015) ....................15

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.,*
    No. 05 CIV.6298(PKC), 2006 WL 2996645 (S.D.N.Y. Oct. 13, 2006)...........................14, 22

*Price Waterhouse LLP v. First Am. Corp.,*
    182 F.R.D. 56 (S.D.N.Y. 1998) ................................................................15

*Roth v. County of Nassau,*
    No. 15-CV-6358-LDW, 2017 WL 75753 (E.D.N.Y. Jan. 6, 2017)..........................21

*Solarex Corp. v. Arco Solar, Inc.,*
    870 F.2d 642 (Fed. Cir. 1989) ................................................................12

*United States v. Columbia Broad. Sys., Inc.,*
    666 F.2d 364 (9th Cir. 1982) ................................................................13

*United States v. Int'l Bus. Mach. Corp.,*
    83 F.R.D. 97 (S.D.N.Y. 1979) ................................................................13

*US Bank Nat'l Ass'n v. PHL Variable Ins. Co.,*
    No. 12 Civ. 6811 (CM), 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) ....................14, 23

*Visto Corp. v. Smartner Info. Sys., Ltd.,*
    No. 06-80339 MISC RMW, 2007 WL 218771 (N.D. Cal. Jan. 29, 2007).......................21

*Wultz v. Bank of China Ltd.*,
    293 F.R.D. 677 (S.D.N.Y. 2013) ..........................................................................15

*Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*,
    No. 10-CV-35A SR, 2013 WL 5652759 (W.D.N.Y. Oct. 15, 2013)................................14, 22

**RULES**

Fed. R. Civ. P.
    26.............................................................................................................................14
    26(b).........................................................................................................................12
    26(b)(2)(C)(i)...........................................................................................................14
    45.......................................................................................................................*passim*
    45(c)(3)(ii)........................................................................................................4, 5, 15
    45(c)(3)(iv)...............................................................................................................15
    45(d)(1).................................................................................................13, 17, 22, 23
    45(d)(1)-(2)..............................................................................................................22
    45(d)(3)(A)(ii)....................................................................................................11, 12
    45(d)(3)(A)(ii)....................................................................................................15, 16
    45(d)(3)(A)(iv)...................................................................................................11, 12
    45(d)(3)(A)(iv)..........................................................................................................12
    45(d)(3)(A)(iv)..........................................................................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On April 4, 2018, Fractus, a Spanish licensing company, sued the four major cellular carriers (AT&T, Sprint, T-Mobile, and Verizon) in the United States District Court for the Eastern District of Texas, alleging infringement of 10 different patents.  On June 18, 2018, as required by the Texas court, Fractus served its infringement contentions, alleging that thousands of antenna models incorporated into defendants' networks (a small percentage of which included approximately 100 different Amphenol antenna models), infringed.

On July 25, 2018, Fractus subpoenaed non-parties Amphenol Corporation (based in Connecticut) and Amphenol Antenna Solutions, Inc. (based in Illinois), seeking detailed discovery on the "multiband" antennas purportedly used by the Defendants as part of the infringing instrumentalities, as alleged in Plaintiff's infringement contentions.  The Subpoenas purported to require compliance in San Francisco, California.  Fractus provided Amphenol with a list of accused Amphenol antenna models on August 2, 2018, and Amphenol timely served its objections to the Subpoenas on August 31, 2018.  Fractus did not respond to Amphenol's objections, including Amphenol's objection directed to the definition of "multiband" antennas.  Fractus also did not respond to Amphenol's offers to meet and confer regarding the scope of certain requests for production.  Amphenol completed its (voluminous) rolling production of responsive documents by November 13, 2018, using the list of antennas provided by Fractus on August 2.  At that point, Amphenol's compliance with the Subpoenas was complete.  Amphenol nonetheless made a small supplement of its production in December 2018, based on Fractus's request.

On January 9, 2019, Fractus disclosed a revised—mostly new and different—list of accused products and demanded that Amphenol redo its production.  Fractus claimed that the newly accused antennas were "omitted" from Amphenol's prior productions.  But just eight

antennas on the revised list overlapped with those in Fractus's June 2018 infringement contentions, and many of the newly identified antennas were "single band" antennas, not the "multiband" antennas that were the subject of Fractus's July 2018 subpoena. On January 11, 2019, less than 48 hours after asking Amphenol to redo its production and while Amphenol was considering that request, Fractus accused Amphenol's completed and previously unobjected-to production of being deficient. Fractus contended that Amphenol's November 2018 production was deficient because Amphenol failed to produce technical documentation for antennas that Fractus first identified to Amphenol on January 9, 2019, and because Amphenol's production was limited to the "multiband" antennas set forth in the July 2018 subpoenas.

Fractus and Amphenol met and conferred twice by phone. On January 18, 2019, Fractus represented that the newly identified antennas were "in the case." That claim was false. As of January 18, 2019, the newly identified antennas had not been accused in the Texas litigation. The parties conferred again on January 24, 2019, but the newly identified antennas were still not formally accused. Fractus first moved for leave to amend its infringement contentions to add the newly identified antennas on January 30, 2019, and the court did not rule on the motion until March 21, 2019. Before the Texas court's decision on Fractus's motion, Amphenol could not fairly evaluate Fractus's facially burdensome request that Amphenol redo its previously completed production.

On February 25, 2019, while its motion for leave to amend was still pending in the Texas court, Fractus filed a motion to compel in the District of Connecticut. In addition to Fractus's request that the court order Amphenol to redo its production to cover the revised and belatedly newly identified list of newly accused products, Fractus also sought certain element-specific technical information that is absent from its Subpoenas. In other words, Fractus's

motion not only asked the court to compel non-parties to redo a voluminous production, it asked the Court to broaden the scope of the production beyond that specified in the original Subpoenas. Fractus did not explain why the thousands of technical files that Amphenol already produced are insufficient to satisfy its original request. Fractus further requested that the court order Amphenol to produce certain sales and marketing documents, agreements, and communications that Fractus could obtain, and in some instances has already obtained, from the Defendants. Finally, Fractus requested that the court order Amphenol to search the entirety of its communications for all time for "mentions" of Fractus or its patents, based only on rank speculation that such non-privileged communications may exist.

On March 4, 2019, while its motion for leave to amend and its motion to compel were pending, Fractus served Amphenol Corporation with two more subpoenas, requesting the same detailed technical, financial, and marketing documents and testimony sought by the July 2018 subpoenas, but now with a different list of antennas. While Fractus had informed Amphenol's outside lawyers that the subpoenas were set for compliance in San Francisco, California, and had sent subpoenas with that information apparent to the outside lawyers, apparently Fractus changed its mind and served the subpoenas on Amphenol for compliance in New York City.[1]

On March 8, 2019, Fractus served a third round of subpoenas on Amphenol Corporation's wholly owned subsidiary Amphenol Antenna Solutions, Inc. seeking additional details on the same subject matter as the requests in its March 4, 2019 Subpoenas, and its motion to compel. These subpoenas were also set for compliance in California.

On March 18, 2019, Amphenol Corporation filed its opposition to Fractus's motion to compel in the District of Connecticut, arguing that Fractus had filed its motion to compel in the

---

[1] Fractus did not notify Amphenol's lawyers about this discrepancy until March 27, 2019.

wrong district, and that its serial requests were unreasonably cumulative and unduly burdensome to a non-party.[2]  Similarly, on March 22, 2019, Amphenol Corporation and Amphenol Antenna Solutions (collectively "Amphenol") filed a motion to quash Fractus's March 4 and 8 subpoenas in the Northern District of California, arguing that Fractus had demanded compliance in the wrong district for at least its March 8 subpoena, and that both sets of subpoenas created an undue burden on non-party Amphenol.

In an apparent attempt to cure these errors, on March 26, 2019, Fractus withdrew its March 8 subpoena and instead served eight more subpoenas on non-party Amphenol.  The first four subpoenas were identical to Fractus's July 30, 2018 subpoenas, but with the place of compliance changed to New York, New York for Amphenol Corporation, and the place of compliance changed to Chicago, Illinois for Amphenol Antenna Solutions.  The remaining four subpoenas were identical to Fractus's March 8, 2019 subpoena against Amphenol Antenna Solutions, but with the place of compliance changed to New York, New York for Amphenol Corporation, and Chicago, Illinois for  Amphenol Antenna Solutions.  In total, Fractus has served thirteen (13) different subpoenas of varying scope on Amphenol and its subsidiary.

The Court should quash Fractus's untimely, burdensome, and legally improper March 4 and March 26 subpoenas for two independent reasons.  First, Amphenol's corporate representatives do not reside, are not employed, and have not regularly transacted business in this judicial district, as required by Federal Rules of Civil Procedure 45(d)(3)(ii) and (iv).  Second, Fractus's Subpoenas should be quashed for creating an undue burden on non-party Amphenol.

---

[2] On March 21, 2019, eight (8) months after Fractus's original subpoenas to Amphenol, and weeks after Fractus's second and third round of subpoenas and motion to compel to Amphenol, the Texas court granted Fractus leave to amend its infringement contentions.

## II.     FACTUAL BACKGROUND

Amphenol Corporation, and its wholly owned subsidiary, Amphenol Antenna Solutions, Inc., manufacture base station antennas, typically sold to cellular carriers to be incorporated into those carriers' networks.  Amphenol Antenna Solutions resides in Illinois and is headquartered in Rockford, Illinois.   Amphenol Corporation resides in Connecticut and is headquartered in Wallingford, Connecticut.

On April 4, 2018, Fractus, a Barcelona-based Spanish licensing company, sued the four major cellular carriers (AT&T, Sprint, T-Mobile, and Verizon) in the United States District Court for the Eastern District of Texas.[3]  Fractus alleged that the carrier Defendants infringe 10 Fractus patents by using certain third-party antennas, including antennas made by Amphenol.  *See, e.g., AT&T Mobility*, Case No. 2:18-cv-00135, Dkt. No. 1.  On June 18, 2018, in compliance with the court's Docket Control Order and the local patent rules, Fractus served its original infringement contentions alleging that thousands of antenna models incorporated into Defendants' networks (a small percentage of which included approximately 100 different Amphenol antenna models), infringed.  *AT&T Mobility*, Case No. 2:18-cv-00135, Dkt. No. 78.  The deadline for substantial completion of document production was February 8, 2019, and fact discovery closes April 15, 2019. *Id.*

---

[3] *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-cv-00135-JRG (E.D. Tex.) ("*AT&T Mobility*"); *Fractus, S.A. v. Sprint Communications Company, L.P., et al.*, No. 2:18-cv-00136-JRG (E.D. Tex.) ("*Sprint Commc'ns*"); *Fractus, S.A. v. T-Mobile US, Inc., et al.*, No. 2:18-cv-00137-JRG (E.D. Tex.) ("*T-Mobile*"); *Fractus, S.A. v. Verizon Communications Inc., et al.* (Case No. 2:18-cv-00138-JRG) ("*Verizon Commc'ns*").  These four cases were consolidated under lead case 2:18-cv-00135 by District Court Judge Rodney Gilstrap on May 29, 2018. *AT&T Mobility*, Dkt. No. 19.

## A.    Amphenol's Full Compliance with Fractus's Subpoena

On July 25, 2018, Fractus served two identical document subpoenas on non-parties Amphenol Corporation and Amphenol Antenna Solutions, Inc., requesting documents sufficient to show, among other things, "each ***multiband*** antenna sold in the United States (including all territories thereof) since the first date of sale of any such antenna, including the model number, all purchaser(s) … date of sale, sale price … cost of goods sold, and gross profit." (Declaration of Rick Frenkel ("Frenkel Decl."), Ex. A, July 25, 2018 Document Subpoena, at Request No. 1.)[4] The Subpoena also requested technical information sufficient to show physical characteristics of each multiband antenna, such as its arrangement, structure, size, spacing, shape, frequency ranges, polarizations, gain, radiation and impedance patterns, and operability with various networks. (*Id.*, Ex. A, July 25, 2018 Document Subpoena, at Request No. 2.)[5]  The Subpoenas purport to require compliance at a San Francisco address located in the Northern District of California. (*Id.*, Ex. A, July 25, 2018 Document Subpoena, at 1.)

Shortly thereafter, on August 2, 2018, Fractus provided Amphenol with a list of nearly 100 accused Amphenol antennas that were identified in its infringement contentions served pursuant to the Eastern District of Texas Patent Local Rules.  (*Id.*, Ex. B, Michael Ng 8/2/19 e-mail to Rick Frenkel.)

On August 31, 2018, Amphenol served its responses and objections to the Subpoena. Amphenol objected to the phrase "multiband base station antenna" as vague and ambiguous, and

---

[4] All emphasis added unless otherwise noted.

[5] The subpoena requested non-party Amphenol's sales and marketing communications concerning the multiband antennas (Request No. 3), all contracts and agreements with the carrier Defendants (Request No. 4), revenue (Request No. 5), patent licenses concerning the multiband antennas (Request No. 6), indemnification (Request No. 7), and any communications relating to Fractus and/or the patents-in-suit (Request No. 8).  (Frenkel Decl., Ex. A, July 25, 2018 Document Subpoena, at Request Nos. 3–8.)

stated that it would apply its understanding of this phrase in interpreting the scope of the requested documents. (*Id.*, Ex. C, at Responses 1, 2.) Amphenol also objected to various categories of requested documents that were overly broad, and that Fractus could obtain from the carrier Defendants. (*Id.*, Ex. C, at Responses 3–5, 8.) Amphenol offered to meet and confer regarding the scope of certain requests for production, but Fractus did not respond to Amphenol's offer, nor any of its objections. (*Id.* at ¶ 6.)

Amphenol diligently collected and produced over 37,000 documents relating to the antennas identified on the list of accused products that Fractus provided to Amphenol. (*Id.* at ¶ 7.) The technical documents produced by Amphenol include product data sheets, schematics, and detailed pattern files that describe, among other things, the polarizations, gain, radiation patterns, impedance, and electrical downtilt capabilities of the accused antennas. (*Id.* at ¶ 8.) Amphenol completed its rolling production on November 13, 2018. (*Id.* at ¶ 7.) In December 2018, Fractus sent a request to Amphenol for certain model number guides and additional metadata for Amphenol's production, which Amphenol investigated and provided without objection. (*Id.*, Ex. D, December E-mail Chain.) Despite having initiated a request to Amphenol for additional information and documents, Fractus did not express any concerns about the scope of Amphenol's production. (*Id.*) Fractus did not identify any newly accused Amphenol products, and never so much as suggested that the scope of the accused Amphenol antennas was being reconsidered or may change. (*Id.*)

### B.     Fractus's January 2019 Request That Amphenol Redo Its Production

On January 9, 2019, nearly two months after Amphenol had completed its production, Fractus, for the first time, disclosed a revised list of antennas. (*Id.*, Ex. E, Luke Burton 1/9/19 e-mail to Rick Frenkel). Instead of accurately characterizing these products as newly accused, Fractus wrongly claimed that the newly accused antennas were "omitted" from Amphenol's prior

productions.[6]  However, only eight antennas overlapped with those in Fractus's infringement contentions and over 80% were not identified in Fractus's infringement contentions.  (*Id*. at ¶ 12.)  Worse, many of the newly identified antennas were in fact "single band" antennas, a very distinct technology from the "multiband" antennas that were the subject of Fractus's Subpoenas.  (*Id*.)  Nevertheless, Amphenol promptly began to investigate Fractus's request.  (*Id*. at ¶ 13.)

Less than 48 hours after issuing its request, and without any additional notice, Fractus e-mailed to (wrongly) accuse Amphenol's previously unobjected-to production of being deficient.  (*Id*., Ex. F, Luke Burton 1/11/19 e-mail to Rick Frenkel.)  Fractus's e-mail alleged that Amphenol's November 2018 production was deficient because it failed to include technical documentation for antennas that Fractus first identified to Amphenol on January 9, 2019, and failed to include certain single band antennas—which had never been previously identified as potentially relevant or responsive.  (*Id*.)  Fractus's deficiency e-mail is problematic for two additional reasons.  First, as Fractus admitted on the subsequent meet-and-confer, Fractus's deficiency notice identified entire categories of documents that its Subpoena does not seek.[7]  Second, Fractus identified certain categories of documents as "deficient" even though Amphenol had produced the requested documents, indicating Fractus had failed to competently review Amphenol's production.[8]

---

[6] Fractus did not characterize its list as a revision, nor did it provide any infringement contentions at that time.  *See generally* Frenkel Decl., Ex. E, January 9, 2019 E-mail.  Fractus first provided an incomplete sample of three infringement charts after the parties' first meet-and-confer on January 18, 2019, and only after Amphenol insisted on receiving them.  (*Id*. at ¶ 11.)

[7] *Compare Id*. at Ex. E (deficiency notice seeking asked for "industry reports and analyses" and "documents reflecting Amphenol's supply chain") *with* Ex. A, July 25, 2018 Subpoena.

[8] For example, Fractus identified "contracts with the carrier defendants" as a category for which Amphenol had not produced documents, when those contracts were the very first documents Amphenol produced in response to Fractus's Subpoenas.  (*Id*. at ¶ 15.)  Further, during the discussion of another category, "documents reflecting costs of installation, maintenance, service and repair" of the accused antennas, it became apparent that Fractus had never even reviewed Amphenol's contracts with the carrier Defendants to see if the requested information was present there.  (*Id*. at ¶ 16.)

### C. The Parties Meet and Confer

Fractus and Amphenol met and conferred on January 18 and 24, 2019. (*Id.* at ¶ 13.) On January 18, 2019, Fractus represented that the newly identified antennas were "in the case." (*Id.* at ¶ 17.) This representation was false. As of January 18, 2019, the newly identified antennas had not been formally accused in the litigation. (*Id.* at ¶ 18.) Fractus first identified these newly-accused antennas in infringement contentions served on Verizon Wireless January 16, 2018—*five days* after sending its deficiency notice to Amphenol.[9] (*Id.* at ¶ 19.) Fractus did not move for leave to amend its infringement contentions until January 30, 2019. (*AT&T Mobility*, Case No. 2:18-cv-00135, at Dkt. No. 150.) Fractus's motion for leave to amend was not granted for another *two months*, March 21, 2019.[10] (*Id.*, at Dkt. No. 225.)

During and after the January 18 meet-and-confer, Fractus represented that it had notified the carrier Defendants of the newly accused antennas in November 2018, but Amphenol has been unable to verify that representation with the carrier Defendants.[11] (*Id.* at ¶ 20.) Fractus raised a concern about purported "discrepancies" between the sales data provided by Amphenol and the purchase data from the carrier Defendants. (*Id.* at ¶ 21.) Amphenol agreed to provide sample invoice data to help resolve the issue, and did so shortly thereafter. Fractus agreed to review the contracts and pattern files already produced by Amphenol and report to Amphenol any specific

---

[9] Fractus only provided an incomplete "sample" of three charts to Amphenol *at Amphenol's insistence* after the parties' first meet-and-confer on January 18, 2019. (*Id.* at ¶ 11.)

[10] The motion confirms that Fractus knows that the newly identified antennas were not "in the case" as of January 9 or 11, and that Fractus requires leave of court to get those antennas into the case.

[11] Although Fractus may argue the delay in serving these new infringement charts is because these charts are based on confidential information it received during discovery, on their face, the infringement charts are "based on publicly available information" and contain excerpts of the datasheets for the newly identified antennas. (*Id.* at ¶ 11.) These datasheets were not produced by Amphenol, and are generally available to the public. (*Id.* at ¶ 11.)

deficiencies, but did not do so.  (*Id*. at ¶ 22.)  At no point during the meet-and-confers did Amphenol agree that venue for a motion to compel is proper in this District.  (*Id*. at ¶ 23.)

Shortly after the January 24 meet-and-confer, Amphenol sent a letter to Fractus memorializing the discussion and requesting that Fractus withdraw its requests.  (*Id*., Ex. F.) Other than confirming that it would not withdraw its requests, Fractus did not communicate further with Amphenol regarding its requests prior to filing its motion to compel a month later on February 25, 2019.  (*Id*. at ¶ 25.)

### D.    Fractus Serves Three Additional Subpoenas

On March 4, 2019, Fractus served two ***new*** subpoenas *duces tecum* on non-party Amphenol Corporation, demanding testimony and production of technical, financial, and marketing documents for the revised antenna list.  (*Id*., Ex. G, March 4, 2019 Subpoenas.)  While Fractus had informed Amphenol's outside lawyers that the subpoenas were set for compliance in San Francisco, California, and had sent subpoenas with that information apparent to the outside lawyers, apparently Fractus changed its mind and served the subpoenas on Amphenol for compliance in New York City.  (*Id*. at ¶ 26.)  Fractus did not notify Amphenol's lawyers about this discrepancy until March 27, 2019.  (*Id*.)  On March 8, 2019, Fractus served ***yet another*** subpoena on non-party Amphenol Antenna Solutions, Inc. seeking the production of documents relating to (i) the external and internal structures for each base station antenna listed, and (ii) each antenna element used in each base station antenna.  (*Id*., Ex. H, March 8, 2019 Subpoena.)  These subpoenas were also set for compliance in California.  (*Id*.)

### E.    Amphenol Responds and Fractus Serves Eight More Subpoenas

On March 18, 2019, Amphenol Corporation filed its opposition to Fractus's motion to compel in the District of Connecticut, arguing that Fractus had filed its motion to compel in the wrong district, and that its serial requests were unreasonably cumulative and unduly burdensome

to a non-party.  *Fractus, S.A., v. Amphenol Corporation*, Case No. 3:19-mc-00024-AWT, Dkt. No. 7.  Similarly, on March 22, 2019, Amphenol Corporation and Amphenol Antenna Solutions (collectively "Amphenol") filed a motion to quash Fractus's March 4 and 8 subpoenas in the Northern District of California, arguing that Fractus had demanded compliance in the wrong district for at least its March 8 subpoena, and that both sets of subpoenas created an undue burden on non-party Amphenol.  *In re: Subpoenas to Testify at a Deposition in a Civil Action*, No. 3:19-mc-80072-JSC, at Dkt. No. 1.

In an apparent attempt to cure these errors, on March 26, 2019, Fractus emailed counsel for Amphenol, initially representing that it was "withdrawing" its March 8 subpoena and asking whether counsel would accept service for **eight** more subpoenas.  (Frenkel Decl., Ex. I, 3/26/19 email from Luke Burton to Rick Frenkel.)  The first four subpoenas were identical to Fractus's July 30, 2018 subpoenas, but with the place of compliance changed to New York, New York for Amphenol Corporation, and Chicago, Illinois for Amphenol Antenna Solutions.  (*Id*., Ex. J.)  The remaining four subpoenas were identical to Fractus's March 8, 2019 subpoena against Amphenol Antenna Solutions, but with the place of compliance changed to New York, New York for Amphenol Corporation, and Chicago, Illinois for Amphenol Antenna Solutions.  (*Id*., Ex. K.)  Fractus stated, however, that its original "subpoenas of July 30, 2018 and March 4, 2019 remain in effect."  (Frenkel Decl., Ex. I.)

It is the March 4 and 26 subpoenas against Amphenol Corporation, which demand compliance in this District, that are the subject of the present motion to quash.

## III.   LEGAL STANDARD

### A.     The Geographic Limits of Rule 45

Pursuant to Rules 45(d)(3)(A)(ii) and (iv) of the Federal Rules of Civil Procedure, the Court must quash a subpoena that either (i) "requires a person who is neither a party nor a party's officer"

to travel more than "100 miles from where that person resides, is employed, or regularly transacts business in person," or (ii) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(ii), (iv).

## B. Discovery Against Non-parties

The Federal Circuit has held that a district court can require a movant to seek discovery from its party opponent before burdening a non-party with an ancillary proceeding. *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (noting that "the need for discovery in an ancillary proceeding is diminished when the information is available elsewhere.") (citation and internal quotation marks omitted).[12] This Court, along with others, have held that "Courts are especially sensitive to the burdens placed on nonparties." *DigiProtect USA Corp. v. Does*, No. 10-CIV-8760-PAC, 2011 WL 4444666, at *4 (S.D.N.Y. Sept. 26, 2011) (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)); *see also Gonzales v. Google, Inc*., 234 F.R.D. 674, 680 (N.D. Cal. 2006) ("the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery.") (citing *Dart Indus. Co. v. Westwood Chem. Co*., 649 F.2d 646, 649 (9th Cir. 1980)).

"While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery." *Dart*, 649 F.2d at 649 (internal citation omitted); *see also Katz v. Batavia Marine & Sporting Supplies, Inc*., 984 F.2d 422, 424 (Fed. Cir. 1993) ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances."). As such, courts routinely recognize that non-parties responding to Rule 45 subpoenas "are powerless to control the scope of litigation and discovery, and should

---

[12] The Federal Circuit has appellate jurisdiction over appeals from ancillary proceedings where the underlying litigation is a patent suit. *Solarex Corp. v. Arco Solar, Inc.*, 870 F.2d 642, 643 (Fed. Cir. 1989).

not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982). "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry. *Cusumano*, 162 F.3d at 717. In fact, "a court may modify or quash a subpoena even for relevant information if it finds that there is an undue burden on the non-party." *Gonzales*, 234 F.R.D. at 683.

### C.     Issuing Party's Duty to Avoid Undue Burden or Expense

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts must "enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." *Id.* "[W]here, as here, discovery is sought from a non-party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non-party." *Fears v. Wilhelmina Model Agency, Inc.*, No. 02-CIV-4911-HB, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) Whether a subpoena imposes an undue burden depends on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (citing *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). Moreover, "[a]ny subpoena that is issued to non-parties pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *Id.* (citing *Ireh v. Nassau Univ. Med. Ctr.*, No, CV-06-09-LDW, 2008 WL 4283344, at *5 (E.D.N.Y. Sept. 17, 2008)); *Gonzales*, 234 F.R.D. at 680 ("if the sought-after documents are not relevant, nor calculated to lead to the

discovery of admissible evidence, then any burden whatsoever imposed would be by definition 'undue.'") [13]

Rule 26 permits the Court to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *Haworth*, 998 F.2d at 978 (affirming order requiring party to seek discovery from its party opponent before burdening the non-party with a subpoena).

Courts commonly cite a party's failure to protect a non-party from undue expense as a standalone basis to deny a non-party discovery, or to award fees and expenses to a non-party. *See, e.g.*, *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, No. 05 CIV.6298(PKC), 2006 WL 2996645, at *3 (S.D.N.Y. Oct. 13, 2006) (awarding to non-party its fees and expenses incurred in compliance with subpoena); *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811 (CM)( JCF), 2012 WL 5395249, at *4 (S.D.N.Y. Nov. 5, 2012) ("Costshifting is particularly appropriate in the context of subpoenas, since Rule 45 directs courts to minimize the burden on non-parties."); *ATLC, Ltd. v. Eastman Kodak Co.*, No. 6:06-CV-416-Orl-19KRS, 2006 WL 3422413, at *2 (M.D. Fla. Nov. 28, 2006) (denying a motion to compel when the party seeking enforcement did not demonstrate how it would compensate the third party or otherwise protect it from undue expense); *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A SR, 2013 WL 5652759, at *4 (W.D.N.Y. Oct. 15, 2013) (granting costs and fees incurred responding

---

[13] "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings…. Once that initial burden has been met, "[a] party contending that a subpoena should be quashed pursuant to Rule 45(c)(3)(A)(iv) must demonstrate that compliance with the subpoena would be unduly burdensome." *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 475 (S.D.N.Y. 2016) (citation omitted).

to a subpoena where the party failed to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena").

## IV. ARGUMENT

### A. Fractus's Subpoenas Must Be Quashed Under FRCP 45(d)(3)(ii) Because The Designated Corporate Representatives Do Not Reside, Work, or Regularly Transact Business in the District

The Southern District of New York is the wrong venue for Fractus's Subpoenas. The Court *must* quash or modify a subpoena if, among other things, it "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person," or if it subjects a person to undue burden. *Wultz v. Bank of China Ltd.*, 293 F.R.D. 677, 679-80 (S.D.N.Y. 2013) (citing Fed. R. Civ. P. 45(d)(3)(A)(ii), (iv)).

When evaluating whether a subpoena against an organization must be quashed under Rule 45(d)(3)(A)(ii) and/or (iv), courts evaluate whether the individuals designated by the organization meet the geographical limitations. *Id.* (granting motion to quash where, in order to produce a knowledgeable designee for the deposition, the non-party would have to send an employee farther than 100 miles, "a result plainly barred by case law."); *Perez v. Progenics Pharm., Inc.*, No. 10-CV-08278 (LAP), 2015 WL 4111551, at *2 (S.D.N.Y. June 24, 2015) ("Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify, not the legal entity for whom those human beings work.") (citing *Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 62 (S.D.N.Y. 1998)).

> A review of the plain text of Rule 45 indicates that the "regularly transacts business" requirement focuses on the *person* to be subpoenaed, and that the business activities of that *person's* employer have no bearing on that requirement. Rule 45 states that "*a person*" may be commanded to attend a trial if "*the person* ... regularly transacts business in person" within the relevant state/area.

*Greene v. Drobocky*, No. 1:12-CV-00078-TBR, 2014 WL 12726539, at *2 (W.D. Ky. Aug. 27, 2014).

On its face, Fractus's Subpoenas request compliance in New York, New York, within the Southern District of New York. (Frenkel Decl., Exs. G, J, K (identifying location of compliance as Kobre & Kim LLP in New York, New York).) But neither Amphenol Antenna Solutions, Inc. nor Amphenol Corporation are located in the Southern District of New York. Amphenol Antenna Solutions, Inc. is headquartered in **Rockford**, **Illinois**, and Amphenol Corporation is headquartered in **Wallingford, Connecticut**.

More importantly, none of the potential designees knowledgeable about the deposition topics outlined in Fractus's Subpoenas either reside, work, or regularly transact business in the Southern District of New York. (Declaration of Justin Riek., at ¶¶ 3-4.) Specifically, each of the topics noticed in Fractus's Subpoenas involve high-performance antenna products designed, manufactured, and sold by Amphenol Antenna Solutions, which has designed and manufactured the products at issue in the subpoena in both Conover, North Carolina, and Rockford, Illinois. (*Id*.) Fractus thus seeks compliance with its Subpoenas in the wrong district under Federal Rule of Civil Procedure 45(d)(3)(ii). For that reason this Court should quash Fractus's Subpoenas.

With respect to Fractus's newly served March 26 subpoenas, which do not include a demand for testimony, they should similarly be quashed as violating Federal Rule of Civil Procedure 45(d)(3)(ii). *See Nieman v. LinkedIn Corp*., No. CV 12-80258 PSG, 2013 WL 685203, at *2 (N.D. Cal. Feb. 25, 2013) ("[N]onparties cannot be required to produce documents at a location more than 100 miles from their home or business."); *Miller v. Holzmann*, 471 F. Supp. 2d 119, 121 (D.D.C. 2007*)* ("[T]he limitation in Rule 45 unequivocally applies both to attending a deposition to testify and to being required to produce documents at a distance more than 100 miles

from one's home. It draws no distinction whatsoever between being compelled to testify and being compelled to produce documents at a certain place.").

## B. Fractus's Requests for Production Are Improper

Fractus's cumulative and onerous requests are improper because they would impose significant expense on a non-party in violation of the Federal Rules. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts must "enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." *Id.* This Court has recognized that "Courts are especially sensitive to the burdens placed on nonparties." *DigiProtect*, 2011 WL 4444666, at *4. "Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Id.* (citing *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)).

Amphenol fully complied with the Subpoenas in good faith and with due diligence, producing more than 37,000 documents. *See supra* Section II.A; Frenkel Decl. at ¶ 7. Fractus is not entitled to the discovery requested in its March 4 and 26 Subpoenas, which seek a redo and re-production of Fractus's previously requested discovery, because complying would impose undue burden and significant expense on non-party Amphenol in violation of the Federal Rules.

### 1. The Second Set of Document Requests and Deposition Topics Are Irrelevant, Duplicative, Unreasonably Cumulative, and Unduly Burdensome

First, Fractus's subpoenas seek documents and testimony not relevant to any claim or defense of any party because they seek  discovery for marketing materials, internal pricing and business methodologies, communications with Defendants, Amphenol's internal organization structure, and services between Amphenol and Defendants. (Frenkel Decl., Ex. G, March 4, 2019

Subpoenas). Such third-party discovery is not relevant to the claims and defenses in the underlying patent infringement case.

This Court and others have routinely quashed or modified subpoenas which include document requests and deposition topics not relevant to the underlying case. *Montana Res., Inc. v. ASARCO LLC*, No. 18-mc-434(AJN), 2019 WL 130579, at *1 (S.D.N.Y. Jan. 8, 2019) (quashing a subpoena because it did not meet the initial relevance hurdle); *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, No. 07 Civ. 7983 (DAB)(HBP), 2013 WL 664711, at *4 (S.D.N.Y. Feb. 25, 2013) ("Given the tenuous claims of relevancy … the subpoenas here constitute an undue burden and thus are subject to modification."); *Free Stream Media Corp. v. Alphonso Inc.*, No. 17-cv-02107-RS(KAW), 2017 WL 6209309, at *5 (N.D. Cal. Dec. 8, 2017) ("[t]he relevance factor thus weighs heavily in favor of quashing the subpoena."); *Broadband iTV, Inc. v. Hawaiian Telecom*, No. 15-mc-80053 HRL, 2015 WL 1778432, at *2 (N.D. Cal. Apr. 17, 2015) (quashing a subpoena that requested documents "not relevant to the claims or defenses of any party"); *see also Miller Marital Deduction Tr. by & through Miller v. Estate of DuBois*, No. 2:16-cv-01883-SB, 2018 WL 1023200, at *3 (E.D. Cal. Feb. 21, 2018) (granting a motion to quash where "the subpoena seeks information that is not relevant to any existing party's claim or defense.").

*Free Stream Media Corp. v. Alphonso Inc.* is instructive. There the court found that document requests and deposition topics such as marketing agreements, other business agreements, information exchanged between the non-party and Defendants, services exchanged between the non-party and Defendants, and Defendants' use of the non-party's technology were not relevant to the case. 2017 WL 6209309, at *5. Similarly, Fractus's March 4 Subpoenas seek documents and testimony regarding marketing materials (Request No. 4, Topic No. 10), internal pricing and business methodologies (Topics 8 and 21), communications with Defendants (Topic

Nos. 13, 18, 19, and 23), Amphenol's internal organization structure (Topic No. 17), and services between Amphenol and Defendants (Topic No. 20). (Frenkel Decl., Ex. G, March 4, 2019 Subpoenas.) As these document requests and deposition topics are irrelevant to the claims or defenses in the underlying case, the Subpoenas should "be quashed as unreasonable even where the burden of compliance would not be onerous." *Kirschner v. Klemons*, No. 99 Civ. 4828(RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 20, 2005); *Gonzales*, 234 F.R.D. at 680 (holding that, for irrelevant documents, "any burden whatsoever imposed would be by definition 'undue.'") (citing *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995)). And even if Fractus could argue some tenuous relevance, "a court may modify or quash a subpoena even for relevant information if it finds that there is an undue burden on the non-party." *Gonzales*, 234 F.R.D. at 683.

Fractus's request for the newly identified antennas is also unreasonably cumulative and unduly burdensome because Amphenol has already fully complied with Fractus's original subpoenas. The newly identified antennas were first raised to Amphenol in January 2019, months after Amphenol had already had completed its production for scores of other antennas that were previously identified by Fractus. *See supra* Section II.B; Frenkel Decl., Ex. E. Fractus failed to timely respond to Amphenol's objections to the Subpoena, which were served in August 2018 and included an objection as to the scope of the accused "multiband base station antenna." *See supra* Section II.A; Frenkel Decl., Ex. C, at Responses 1, 2. And Fractus failed to notify Amphenol as soon as it realized that it intended to accuse the newly identified antennas—which, by its own admission, occurred in November 2018. *See supra* Section II.C; Frenkel Decl. at ¶ 20.

The Court should quash Fractus's Subpoenas, which target documents and testimony not relevant to any claim or defense in the underlying litigation, and which seek a near-complete redo

of its discovery months after Amphenol, a non-party, completed its production in full compliance with Fractus's original subpoenas.

### 2. Fractus Has Imposed Significant Cost on Non-party Amphenol

Second, Fractus's onerous subpoenas have the effect of shifting the financial burden of discovery onto non-party Amphenol. That is improper. When evaluating undue burden, Courts consider the cost of responding to a subpoena. *See Keebler v. Rath*, 405 F. App'x 517, 520 (2d Cir. 2010) (affirming an order quashing a subpoena which "clearly constituted an 'undue burden'" by requiring a non-party to "review over 83,000 computer files, at a cost of over $80,000 in salary and benefits,"); *Free Stream Media Corp.*, 2017 WL 6209309, at *6 (noting that the non-party had already incurred over $50,000 in expenses responding to Plaintiff's subpoena, and would likely incur similar costs responding to this new subpoena).

Here, non-party Amphenol has spent months collecting and producing over 37,000 documents, and has further incurred additional legal fees having to respond to Fractus's multiple requests, meet and confers, improper deficiency notices, and now ***thirteen*** total subpoenas ***and*** a motion to compel. To date, non-party Amphenol has had its employees and lawyers spend numerous hours, incurring tens of thousands of dollars in legal fees, to collect the massive production to date, and will likely incur similar costs responding to these new subpoenas. (Frenkel Decl., at ¶ 28.) This is a separate basis to quash. *See Free Stream Media*, 2017 WL 6209309, at *5 ("The undue burden test also requires that the Court be 'generally sensitive to the costs imposed on third-parties.'") (citation omitted).

### 3. The Subpoenas Seek Information That Fractus Could More Easily Get from Defendants

Third, Fractus contends that it is entitled to seek documents from non-party Amphenol that it could readily obtain from the Defendants. Fractus is wrong. Courts routinely denied discovery

on non-parties when they are available from a party. *N'Diaye v. Metro. Life Ins. Co.*, No. 17-cv-4260(GBD)(BCM), 2018 WL 2316335, at *7 (S.D.N.Y. May 8, 2018) (denying non-party discovery where plaintiff failed to establish that the non-parties had documents unobtainable through party discovery); *Roth v. County of Nassau*, No. 15-CV-6358-LDW, 2017 WL 75753, at *6 (E.D.N.Y. Jan. 6, 2017) (quashing subpoena to the extent it sought plaintiff's "current compensation and benefit information" from his employer, where the same information could be obtained from plaintiff himself).[14]

Fractus's March 4, 2019 Subpoenas seek testimony on topics that properly direct to the Defendants. For example, these Subpoenas seek Amphenol's communications with Defendants (*see, e.g.*, Topic Nos. 13, 18, 19, and 23); Amphenol's indemnification obligations (Topic No. 12); and services between Amphenol and Defendants (Topic No. 20). *See supra* Section II.D; Frenkel Decl., Ex. G. Such requests create a burden on non-party Amphenol that outweighs the likely benefit of the subpoena absent a "*convincing* showing that the subpoena is likely to yield *unique and material evidence* from the third party." *Nidec Corp.* 249 F.R.D. at 577. Fractus cannot make a "convincing showing" that its subpoena will produce "unique and material evidence" from Amphenol. Absent that showing, Fractus's Subpoenas should be quashed.

**C.    Fractus Has Failed to Take Reasonable Steps to Avoid Imposing Undue Burden and Expense on Non-party Amphenol**

Fractus's Subpoenas should be quashed because Fractus has failed to take reasonable steps to avoid imposing undue burden and expense on non-party Amphenol, as required by the

---

[14] *See also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("the vast majority of the discovery sought from [the non-party investor] is discovery obtainable from a source more direct, convenient, and less burdensome — namely, from Defendants."); *Visto Corp. v. Smartner Info. Sys., Ltd.*, No. 06-80339 MISC RMW, 2007 WL 218771, at *1-4 (N.D. Cal. Jan. 29, 2007) (quashing defendant's subpoena on third-party investors where the sought-after information was available from the plaintiff).

Federal Rules. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts must enforce this duty with appropriate sanctions, and protect non-parties from "significant expense" resulting from compliance. Fed. R. Civ. P. 45(d)(1)-(2). Consistent with these provisions, this Court and others have denied discovery requests where the requesting party failed, through its own lack of diligence, to avoid imposing undue burden on a non-party. *See Zoological Soc.*, 2013 WL 5652759, at *4 (quashing a subpoena where the party failed to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"); *see also ASUS Computer Int'l v. Micron Tech. Inc.*, No. 14-cv-00275 JST (NC), 2014 WL 12625461, at *4 (N.D. Cal. Apr. 21, 2014) (denying motion to compel and granting costs to non-party where the plaintiff had not adequately reviewed previously produced discovery to ensure the discovery it now sought from the non-party was already in its possession, and finding that "[t]his lack of diligence before burdening a non-party with discovery requests is not permissible under the Federal Rules"). *ATLC*, 2006 WL 3422413, at *2 (denying a motion to compel when the party seeking enforcement did not demonstrate how it would compensate the third party or otherwise protect it from "undue burden or expense") (citing prior version of Fed. R. Civ. P. 45(d)(1))

Although Amphenol is not seeking its fees here, this Court and others have also cited this provision of the Federal Rules as a standalone basis to award fees and expenses to a non-party for the cost of its burdensome response). *See, e.g., Prescient*, 2006 WL 2996645, at *3 (awarding to non-party 50% of its fees and 100% of its expenses incurred in compliance with subpoena, even where no breach of duty under Rule 45) (citing prior version of Fed. R. Civ. P. 45(d)(1)-(2)); *Zoological Soc.*, 2013 WL 5652759, at *4 (granting costs and fees incurred responding to a

subpoena); *US Bank*, 2012 WL 5395249, at *4 ("Costshifting is particularly appropriate in the context of subpoenas, since Rule 45 directs courts to minimize the burden on non-parties.")

Amphenol has complied with Fractus's original Subpoenas, producing more than 37,000 documents. *See supra* Section II.a; Frenkel Decl. at ¶ 7. Fractus has failed to take reasonable steps to avoid imposing undue burden or expense on Amphenol. Fractus initially provided a list of nearly 100 accused antennas that Amphenol used to collect and produce tens of thousands of responsive technical documents, but failed to timely notify Amphenol that is had accused an almost entirely different set of antennas. *See supra* Section II.C; Frenkel Decl. at ¶ 20. Fractus failed to timely respond to Amphenol's objections to the Subpoena, and only accepted Amphenol's offer to meet and confer two months after Amphenol completed its production. *See supra* Section II.C; Frenkel Decl. at ¶ 6. Fractus failed to review certain documents in Amphenol's production to narrow or modify its requests, despite promising to do so on the parties' meet-and-confers. *See supra* Section II.C; Frenkel Decl. at ¶ 17. Amphenol put Fractus on notice in writing that Fractus was not in compliance with Federal Rule of Civil Procedure 45(d)(1), but Fractus moved to compel and served *three* additional subpoenas instead of narrowing or withdrawing its requests. *See supra* Section II.C; Frenkel Decl., Ex. F. Fractus did so before obtaining leave from the Texas court to amend its infringement contentions. *See supra* Section II.C. And once Amphenol pointed out that Fractus had demanded compliance to its subpoenas in the wrong district, instead of withdrawing its deficient motion to compel and subpoenas, Fractus instead served *eight* more subpoenas on non-party Amphenol. *See supra* Section II.D.

Fractus has imposed unduly burdensome expenses on Amphenol and flouted its obligations under the Federal Rules. The Court quash Fractus's subpoenas.

**V.       CONCLUSION**

WHEREFORE non-party Amphenol respectfully requests that the Court quash Fractus's Subpoenas in their entirety and award Amphenol the fees and expenses associated with this motion.  In the alternative and because Amphenol has fully responded to the July 2018 Subpoenas, should this Court permit Fractus's latest Subpoenas, Amphenol respectfully requests that the Court award fees and expenses associated with compliance.

Dated:      March 29, 2019
            New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

By:/s/ Maximilian A. Grant
      Maximilian A. Grant

885 Third Avenue
New York, New York  10022
Tel: (212) 906-1200
Fax: (212) 751-4864
Email:  max.grant@lw.com

Richard G. Frenkel (*Pro hac vice to be submitted*)
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
Tel: (650) 328-4600
Fax: (650) 463-2600
Email: rick.frenkel@lw.com

Bradley A. Hyde (*Pro hac vice to be submitted*)
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626
Tel: (714) 540-1235
Fax: (714) 755-8290
Email: bradley.hyde@lw.com

*Attorneys for Petitioner Amphenol Corporation*