UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMPHENOL CORPORATION,<br><br>            Petitioner,<br><br>v.<br><br>FRACTUS, S.A.,<br><br>            Respondent. | Misc. Case No. 19-mc-160<br><br>Related to *Fractus, S.A. v. AT&T Mobility LLC, et al.*, No. 2:18-cv-00135 (JRG) (E.D. Tex.)<br><br>**DECLARATION OF RICHARD G. FRENKEL IN SUPPORT AMPHENOL CORPORATION'S MOTION TO QUASH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION** |

I, Richard G. Frenkel, declare as follows:

1.      I am a partner with the law firm of Latham & Watkins LLP, counsel for Petitioner Amphenol Corporation ("Amphenol") in this action.

2.      I submit this Declaration in support of Amphenol's Motion to Quash Subpoena to Testify at a Deposition in a Civil Action.  The facts set forth below are within my personal knowledge, to which I could and would testify competently if called upon to do so.

3.      Attached as **Exhibit A** is a true and correct copy of the July 25, 2018 document subpoenas served upon non-parties Amphenol Corporation and Amphenol Antenna Solutions, Inc.  Upon receipt of these subpoenas, I contacted Fractus attorney Michael Ng, and asked him to explain to me which Amphenol products were at issue in the underlying patent litigation between Fractus and Amphenol's customers, Verizon and AT&T.  He promised to send me a list of products which Amphenol could use for collection of documents and financial information.

4.      Attached as **Exhibit B** is a true and correct copy of an August 2, 2018 email chain from Michael Ng to me, setting forth the Amphenol antennas then at issue in the underlying Fractus patent litigation.

5. Attached as **Exhibit C** is a true and correct copy of Amphenol's August 31, 2018 responses and objections to Fractus's July 25, 2018 subpoenas.

6. Fractus did not respond to Amphenol's August 31, 2018 objections to Fractus's July 25, 2018 subpoenas, or attempt to meet and confer on Amphenol's objections to the term "multiband base station antenna."

7. Amphenol collected and produced over 37,000 documents relating to the antennas identified on the list of accused products that Fractus provided to Amphenol, completing its production of documents on November 13, 2018.

8. The technical documents produced by Amphenol to Fractus include product data sheets, schematics, and detailed pattern files that describe, among other things, the polarizations, gain, radiation patterns, impedance, and electrical downtilt capabilities of the accused antennas. The production further included its post-suit, non-privileged communications regarding indemnification, by agreement. Finally, Amphenol produced detailed financial information relating to the accused antennas.

9. Attached as **Exhibit D** is a true and correct copy of December email chain between Luke Burton (lawyer for Fractus), Alan Billharz (lawyer for Amphenol), and me, regarding requests for certain model number guides and additional metadata for Amphenol's production.

10. Attached as **Exhibit E** is a true and correct copy of a January 9, 2019 email from Luke Burton to me.

11. Fractus first provided an incomplete sample of three infringement charts after the parties' first meet-and-confer on January 18, 2019, and only after Amphenol insisted on receiving them. On their face, the infringement charts are "based on publicly available information" and contain excerpts of the datasheets for the newly identified antennas. These datasheets were not produced by Amphenol, and are generally available to the public.

12. Only eight antennas listed in Fractus's January 9, 2019 email overlapped with those in Fractus's infringement contentions and over 80% were not identified in Fractus's

infringement contentions. Further, many of the antennas on Fractus's revised antenna list are "single band" antennas in that they cover an uninterrupted band of frequencies. Although Amphenol refers to these antennas as "single band," Amphenol learned for the first time in January 2019 that Amphenol considered these to be "multiband" antennas.

13. Amphenol promptly began to investigate Fractus's January 9, 2019 request.

14. Fractus identified certain categories of documents as "deficient" even though Amphenol had produced the requested documents, indicating Fractus had failed to competently review Amphenol's production. For example, Fractus identified "contracts with the carrier defendants" as a category for which Amphenol had not produced documents, when those contracts were the very first documents Amphenol produced in response to Fractus's subpoena.

15. Further, during the discussion of another category, "documents reflecting costs of installation, maintenance, service and repair" of the accused antennas, it became apparent that Fractus had never even reviewed Amphenol's contracts with the carrier Defendants to see if the requested information was present there. Amphenol requested that Fractus review the agreements and determine whether the information it seeks is not present, but has not received any communications from Fractus that this has occurred.

16. Fractus and Amphenol met and conferred on January 18 and 24, 2019.

17. On January 18, 2019, Fractus represented that the newly identified antennas were "in the case." Fractus also promised to review certain documents in Amphenol's production to narrow or modify its requests.

18. Fractus did not move for leave to amend its infringement contentions until January 30, 2019. (*AT&T Mobility*, Case No. 2:18-cv-00135, at Dkt. No. 150.)

19. Fractus first identified these newly-accused antennas in infringement contentions served on Verizon Wireless January 16, 2018—***five days*** after sending its deficiency notice to Amphenol.

20. During and after the January 18 meet-and-confer, Fractus represented that it had notified the carrier Defendants of the newly accused antennas in November 2018, but Amphenol has been unable to verify that representation with the carrier Defendants.

21. Fractus raised a concern about purported "discrepancies" between the sales data provided by Amphenol and the purchase data from the carrier Defendants.

22. Amphenol agreed to provide sample invoice data to help resolve the issue, and did so shortly thereafter. As far as Amphenol understands, there were slight variances in the way that Amphenol and the carriers record model numbers for the accused antennas, and that issue was resolved. Fractus agreed to review the contracts and pattern files already produced by Amphenol and report to Amphenol any specific deficiencies, but did not do so.

23. While I mentioned during a meet-and-confer that Amphenol Corporation had its headquarters in Connecticut, at no point during the meet-and-confers did I or any other Amphenol lawyer agree that venue for a motion to compel is proper in this District.

24. Attached as **Exhibit F** is a true and correct copy of a January 24, 2019 letter from me to Luke Burton.

25. Other than confirming that it would not withdraw its requests, Fractus did not communicate further with Amphenol regarding its requests prior to filing this motion a month later on February 25, 2019.

26. Attached as **Exhibit G** is a true and correct copy of the Fractus subpoenas served March 4, 2019 upon non-parties Amphenol Corporation and Amphenol Antenna Solutions, Inc. While Fractus had informed Amphenol's outside lawyers that the subpoenas were set for compliance in San Francisco, California, and had sent subpoenas with that information apparent to the outside lawyers, apparently Fractus changed its mind and served the subpoenas on Amphenol for compliance in New York City. Fractus did not notify Amphenol's lawyers about this discrepancy until March 27, 2019.

27. Attached as **Exhibit H** is a true and correct copy of the Fractus subpoena served March 8, 2019 upon non-party Amphenol Corporation.

4

28.     To date, non-party Amphenol has had its employees and lawyers spend numerous hours, incurring tens of thousands of dollars in legal fees, to collect the massive production to date, and will likely incur similar costs responding to these new subpoenas.

29.     Attached as **Exhibit I** is a true and correct copy of the March 26, 2019 email from Luke Burton to me.

30.     Attached as **Exhibit J** is a true and correct copy of the four new subpoenas Fractus emailed to me on March 26, 2019, which were identical to Fractus's July 30, 2018 subpoenas, but with the place of compliance changed to New York, New York for Amphenol Corporation, and the place of compliance changed to Chicago, Illinois for Amphenol Antenna Solutions. My understanding is that Fractus served these identical subpoenas on Amphenol Corporation and Amphenol Antenna Solutions. However, in the past, Fractus has emailed subpoenas to me, and then served slightly different subpoenas on my client. Because the date of compliance is so short after the emailing of the subpoenas to me, for the purposes of this motion to quash Amphenol has assumed that it has been or shortly will be served with each of the subpoenas emailed to me on March 26.

31.     Attached as **Exhibit K** is a true and correct copy of the four new subpoenas Fractus emailed to me on March 26, 2019, which were identical to Fractus's March 8, 2019 subpoenas, but with the place of compliance changed to New York, New York for Amphenol Corporation, and the place of compliance changed to Chicago, Illinois for Amphenol Antenna Solutions. My understanding is that Fractus served these identical subpoenas on Amphenol Corporation and Amphenol Antenna Solutions. However, in the past, Fractus has emailed subpoenas to me, and then served slightly different subpoenas on my client. Because the date of compliance is so short after the emailing of the subpoenas to me, for the purposes of this motion to quash Amphenol has assumed that it has been or shortly will be served with each of the subpoenas emailed to me on March 26.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

This declaration was executed on March 29, 2019 in Palo Alto, California.

_____
Richard G. Frenkel