**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMPHENOL CORPORATION,

      *Petitioner and Cross-Respondent,*

  v.

FRACTUS, S.A.,

      *Respondent and Cross-Movant.*

Misc. Action No. 19-mc-160 (PAE)

Related to *Fractus, S.A. v. AT&T Mobility LLC, et al., No. 2:18-cv-00135 (E.D. Tex.)*

**COMBINED MEMORANDUM IN OPPOSITION TO NON-PARTY AMPHENOL CORPORATION'S MOTION TO QUASH AND IN SUPPORT OF FRACTUS' CROSS-MOTION TO COMPEL COMPLIANCE WITH RULE 45 SUBPOENA**

**KOBRE & KIM LLP**
800 Third Ave.
New York, New York 10022
(212) 488-1200

*Attorneys for Respondent and Cross-Movant Fractus, S.A.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

LEGAL STANDARD .............................................................................................................. 5

ARGUMENT ........................................................................................................................... 8

    I.    Amphenol Is Located Within 100 Miles of the Place Set for Compliance in the Subpoena, and the Court Should Decline to Quash It for That Reason ...................................... 8

    II.    Amphenol Should Be Required to Produce the Technical Information Sought in the Subpoena.................................................................................................................... 9

    III.    Amphenol Should Be Required to Produce the Sales and Marketing Information Sought in the Subpoena................................................................................................ 12

    IV.    Amphenol Should Be Required to Produce the Communications Sought in the Subpoena.................................................................................................................. 15

    V.    Amphenol Should Be Required to Produce a Witness to Testify About the Topics Recited in the Subpoena................................................................................................ 16

CONCLUSION....................................................................................................................... 17

**TABLE OF AUTHORITIES**

**Cases**

*Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*,
No. 4:08-mc-00017 (JLH), 2008 WL 4853620 (E.D. Ark. Nov. 6, 2008) ............................. 14

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*,
105 F.R.D. 16 (S.D.N.Y. 1984) ............................................................... 6

*Daval Steel Prods. v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991)................................................................ 6

*Ferguson v. TD Bank, N.A.*,
268 F.R.D. 153 (D. Conn. 2010)........................................................*passim*

*GMA Accessories, Inc. v. Elec. Wonderland, Inc.*,
No. 07 Civ. 3219 (PKC) (DF), 2012 WL 1933558 (S.D.N.Y. May 22, 2012).......................... 7

*High Point Sarl v. Sprint Nextel Corp.*,
No. 09 Civ. 2269 (CM) (DJW), 2011 WL 124534 (D. Kan. Jan. 14, 2011) .................... 14, 15

*LG Display Co. v. Chi Mei Optroelectronics Corp.*,
No. 08-cv-02408 (POR), 2009 WL 223585 (S.D. Cal. Jan. 28, 2009).............................. 13, 14

*Linder v. Nat'l Sec. Agency*,
94 F.3d 693 (D.C. Cir. 1996)................................................................ 7

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)......................................................................... 6

*Price Waterhouse LLP v. First Am. Corp.*,
182 F.R.D. 56 (S.D.N.Y. 1998) ............................................................. 9

*Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transportation*,
180 F. Supp. 3d 290 (S.D.N.Y. 2016)....................................................... 8

*Sberbank of Russia v. Traisman*,
No. 3:14-cv-00216, 2016 WL 4479533 (D. Conn. Aug. 23, 2016)....................... 5, 7

*Software Rights Archive, LLC v. Google Inc.*,
Misc. No. 09-017 (JJF), 2009 WL 1438249 (D. Del. May 21, 2009) ..................... 14

*State Farm Mut. Auto Ins. Co. v. Elite Health Centers, Inc.*,
No. 2:16-cv-13040, 2018 WL 4927171 (E.D. Mich. Oct. 11, 2018)........................ 7

*State Farm Mut. Auto Ins. Co. v. Physiomatrix, Inc.*,
  No. 12-cv-11500, 2013 WL 10936871 (E.D. Mich. Nov. 26, 2013) .......................................... 7

*Syposs v. United States*,
  181 F.R.D. 224 (W.D.N.Y. 1998) ............................................................................................. 8

*Viacom Int'l, Inc. v. YouTube, Inc.*,
  No. C 09-80129, 2008 WL 3876142 (N.D. Cal. Aug.18, 2008) ............................................ 14

*Wiwa v. Royal Dutch Petroleum Co.*,
  392 F.3d 812 (5th Cir. 2004) ...................................................................................................... 7

*Wultz v. Bank of China Ltd.*,
  293 F.R.D. 677 (S.D.N.Y. 2013) ................................................................................................ 9

**Rules**

Fed. R. Civ. P. 26(b)(1) ....................................................................................................... 6, 7, 8

Fed. R. Civ. P. 45 ...................................................................................................................... 6

Fed. R. Civ. P. 45(c)(1)(A) ........................................................................................................ 8

Fractus, S.A. ("Fractus") respectfully submits this memorandum of law in opposition to the motion of Amphenol Corporation ("Amphenol") to quash the document and deposition subpoena (the "Subpoena") that Fractus served pursuant to Federal Rule of Civil Procedure 45, and in support of Fractus' cross-motion to compel Amphenol to produce the documents set forth in the subpoena and a witness to testify about the topics set forth therein. For the reasons below and in the accompanying declarations, Fractus respectfully requests that the Court deny Amphenol's motion and instead compel it to produce the requested discovery by no later than April 8, 2019. This timeline is necessary due to the impending discovery deadline of April 15, 2019, in the underlying litigation.

## INTRODUCTION

The Subpoena Amphenol seeks to quash and Fractus seeks to enforce seeks a limited set of highly relevant documents and deposition testimony from Amphenol on a limited set of topics, critical to Fractus' claims for patent infringement against mobile telephone service carriers AT&T, Verizon, Sprint, and T-Mobile (collectively, "the Carrier Defendants"). Amphenol is a key manufacturer and provider to the Carrier Defendants of the antennas Fractus accuses of patent infringement. The documents in Amphenol's possession, custody, or control either cannot be produced by the Carrier Defendants or are crucial to verifying the accuracy of other documents that *have* been produced by the Carrier Defendants. Their production poses no undue burden upon Amphenol and is not unnecessarily duplicative of other discovery obtained during this litigation. Amphenol also possesses key testimonial evidence on these highly relevant topics, and Fractus has repeatedly, but unsuccessfully, sought to meet and confer with Amphenol to arrange compliance with the Subpoena in whatever places are most convenient for its corporate representatives. The information Fractus seeks constitutes typical, standard discovery in cases like this, as evidenced by the fact Amphenol already produced it for other products. In fact, the central objection

1

Amphenol initially (and improperly) raised was that the Eastern District of Texas had not formally allowed supplementation of infringement contentions to include the infringing products identified in discovery. But once the Court granted amendment, Amphenol launched an all-out effort across multiple courts to stall production until after the close of discovery. This tactic is unsurprising, given Amphenol's direct interest in the case as manufacturer and supplier of the infringing antennas. Amphenol is not a disinterested third party but instead has a direct economic interest in refusing to fulfill its discovery obligations regarding the Supoena by abusing motion practice in the hope that it can vindicate its own interests. Indeed, of the ***five*** antenna manufacturers involved in the underlying case, on whom Fractus has served largely identical discovery requests, ***only*** Amphenol has refused to comply and has instead engaged in motion practice and other gamesmanship across three separate judicial districts. Because discovery requests, including third-party subpoenas, should be construed liberally, and for all the reasons set forth in detail below, Fractus respectfully requests that the Court deny Amphenol's motion to quash and grant Fractus's cross-motion to compel.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

Fractus is a world-renowned leader in the development of antennas for the telecommunications industry and the inventor of high-performance antennas that allow the Carrier Defendants to deliver high-speed internet access to their customers. On April 9, 2018, Fractus filed four separate actions in the Eastern District of Texas accusing each of the four Carriers of infringing ten of its patents in the field of antenna design ("the Patents-in-Suit"). *See, e.g.*, Declaration of Luke J. Burton in Support of Fractus's Opposition and Cross Motion ("Burton Dec.") Ex. 1. Discovery closes on April 15, 2019, and trial begins on September 9, 2019.

Amphenol describes itself as "a leading global interconnect solutions and antenna provider to the mobile networks market, offering a wide product portfolio supporting virtually every wireless communications standard." Burton Dec., Ex. 2. Amphenol's world headquarters are at 358 Hall Avenue, Wallingford, Connecticut. Burton Dec., Ex. 3. This address is 87 miles from the New York offices of Fractus's counsel, Kobre & Kim LLP, where the instant subpoena requests compliance. Burton Dec., Ex. 4. Amphenol supplies antennas to all four of the Carrier Defendants. Burton Dec. at ¶ 6.

On July 25, 2018, Fractus served the original subpoena ("Original Subpoena") on Amphenol, seeking certain documents pertinent to antenna models sold by Amphenol and setting the Northern District of California as the district of compliance out of courtesy to Amphenol's counsel, whose offices are in Palo Alto, California. Burton Dec., Ex. 4. Specifically, Fractus propounded eight document requests seeking "drawings, schematics, diagrams, datasheets, blueprints and/or electromagnetic simulation files" sufficient to identify certain characteristics of the accused antennas; sales and marketing communications concerning the accused antennas; contracts and agreements with the Carrier Defendants regarding the accused antennas, revenues therefrom, and indemnification agreements related thereto; licenses pertaining to multiband antenna technology; and communications regarding Fractus. *Id.* at Attachment A. Fractus propounded parallel discovery requests upon the Carrier Defendants. *See, e.g.*, Burton Dec., Ex. 5.

Amphenol served objections to the Original Subpoena, taking issue with Fractus's definition of certain terms. Burton Dec., Ex. 6. In an effort to narrow the parties' dispute, on August 2, 2018, Fractus provided Amphenol with a list of the antennas it was accusing of infringement in the underlying litigation, and Amphenol produced a limited number of responsive documents.

Burton Dec., Ex. 8. As discovery progressed, Fractus encountered numerous discrepancies between technical, sales and marketing documents produced by the Carrier Defendants and those produced by third-party antenna providers like Amphenol. *Id.* at ¶ 16.  In addition, as discovery progressed, and as the Carrier Defendants' production of previously unavailable, highly confidential materials enabled Fractus to refine its contentions regarding which antennas infringed the Patents-in-Suit, Fractus updated its infringement contentions and presented Amphenol with its revised list of accused antennas on January 9, 2019.[1] Burton Dec., Ex. 7. That revised list included a limited number of certain models of accused antennas that had been on Fractus's initial list, as well as certain newly accused antenna models whose infringement Fractus had discovered upon review of the Carrier Defendants' discovery. *Id.*

On January 18, 2019, following an exchange of messages, Fractus and Amphenol met and conferred telephonically in an effort to reach agreement on Amphenol's compliance with the Original Subpoena. Burton Dec. at ¶ 11. During that call and a subsequent one on January 24, Amphenol indicated that it would not produce any schematics, technical documents, sales or marketing information for the newly identified accused antenna models on the ground that they "were not in the case." *Id.* Amphenol further refused to produce the requested simulation files for any of the accused antenna models, contending that datasheet information was sufficient. *Id.* ¶ 12. Finally, Amphenol refused to search for any of its own communications regarding Fractus or its patents on the ground that they are irrelevant, as Amphenol is not a party. *Id.* In subsequent correspondence on January 24, 2019, Amphenol clarified that it would not produce marketing

---

[1] On January 30, 2019, Fractus filed its formal motion to amend its infringement contentions in light of the newly-discovered information. Since the outset of the litigation, Fractus has timely provided the Carrier Defendants with updated infringement claim charts as it prepared them upon receipt of their confidential technical information. On March 21, 2019, the Eastern District of Texas granted Fractus's motion to amend.

materials; antenna installation, maintenance, service or repair cost information; or pre-suit communications regarding *any* of the accused antenna models because "the carrier defendants will have copies of whatever marketing materials Amphenol provided" and because "Amphenol, as a third party, should not be forced to provide such documents." Burton Dec., Ex. 9. Following a further exchange of emails, the parties were unable to resolve these issues, and on February 25, 2019, Fractus moved to compel compliance with the Original Subpoena in the District of Connecticut.

Given the short amount of time remaining in the discovery period, and in order to avoid any prejudice, on March 4, 2019, Fractus additionally served the instant Subpoena on Amphenol, expressly reciting all of the antennas it has accused of infringement and seeking documents and testimony. On March 22, 2019, Amphenol moved to quash the Subpoena, which Fractus had once again set for compliance in the Northern District of California as a courtesy to Amphenol's counsel. In the interim, despite multiple requests by Fractus to Amphenol to meet and confer regarding the document and deposition Subpoena, Amphenol declined to do so.  Burton Dec., Ex. 10.  In response, again as a courtesy to Amphenol and in order to minimize any inconvenience to its employees, on March 26, 2019, Fractus withdrew the Subpoena and re-served it, this time seeking compliance in New York, 87 miles from Amphenol's headquarters. Amphenol's motion followed. Burton Dec., Ex. 11.  Once again, Fractus sought to meet and confer with Amphenol to identify the most convenient place for compliance with the subpoena, and once again Amphenol refused to do so. *Id.*

## LEGAL STANDARD

"Pursuant to Federal Rule of Civil Procedure 45, a party may serve a subpoena commanding a nonparty 'to attend and testify' or to 'produce designated documents.'" *Sberbank of Russia v. Traisman*, No. 3:14-cv-00216, 2016 WL 4479533, at *1 (D. Conn. Aug. 23, 2016)

5

(granting motion to compel and denying motion to quash and for protective order); *see also* Fed. R. Civ. P. 45 Advisory Committee Note ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34.").

Rule 26(b)(1) allows discovery of non-privileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case." It directs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (affirming sanctions against party who failed to comply with court's discovery order requiring party to comply with document and deposition requests).

"The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Ferguson v. TD Bank, N.A.*, 268 F.R.D. 153, 155 (D. Conn. 2010) (granting motion to compel). "Relevance" under Fed. R. Civ. P. 26(b)(1) has been construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978)).

 "[T]he objecting party bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Ferguson*, 268 F.R.D. at 155 (citing *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum*

*Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984) (granting in part motion to compel)). Whether a subpoena imposes an undue burden depends upon factors such as relevance, the requesting party's need for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed. *Sberbank of Russia*, 2016 WL 4479533, at *1.

The Court has wide discretion to enforce, quash or modify a subpoena. *See, e.g.*, *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818-19 (5th Cir. 2004) (reviewing district court's decision on motion to compel for abuse of discretion). "Generally, modification of a subpoena is preferable to quashing it outright." *Id.* at 818; *see also Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996) (suggesting that "a modification of a subpoena is generally preferred to outright quashing" unless a subpoena cannot be modified "in any fruitful manner").

Although Rule 45(d) permits the Court to quash a subpoena that imposes an "undue burden," courts routinely underscore that the phrase "'undue burden' . . . does not mean no burden at all," *State Farm Mut. Auto Ins. Co. v. Elite Health Centers, Inc.*, No. 2:16-cv-13040, 2018 WL 4927171, at *6 (E.D. Mich. Oct. 11, 2018) (internal citation and quotation marks omitted). Indeed, "[a]ny requirement for a third-party to comply with a subpoena will generate some burden in time and expense." *State Farm Mut. Auto Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 WL 10936871, at *14 (E.D. Mich. Nov. 26, 2013).

Whether a burden is "undue" turns on the circumstances. Those circumstances include the relevancy of the discovery sought, the necessity of that discovery, the breadth of the request, whether the evidence is available from another source, and the proportionality considerations of Fed. R. Civ. P. 26(b)(1). *See, e.g.*, *Wiwa*, 392 F.3d at 818; *GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07 Civ. 3219 (PKC) (DF), 2012 WL 1933558, at *5 (S.D.N.Y. May 22,

2012); *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998). "The importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit" thus inform the analysis. Fed. R. Civ. P. 26(b)(1).

## **ARGUMENT**

### I. **Amphenol Is Located Within 100 Miles of the Place Set for Compliance in the Subpoena, and the Court Should Decline to Quash It for That Reason**

The Subpoena should not be quashed because Amphenol is located within 100 miles of the place Fractus set for compliance and because Fractus has repeatedly informed Amphenol it is willing to accept production of the requested documents and witnesses in an appropriate and convenient location. Fractus served the Subpoena on Amphenol in the Southern District of New York specifically in order to make compliance as easy as possible. As set forth above, the offices of Fractus's counsel are located 87 miles away from Amphenol's headquarters. More importantly, Fractus has repeatedly invited Amphenol to meet and confer precisely so that it could ascertain the most appropriate and convenient place of compliance for Amphenol.

Under Rule 45, a subpoena may command deposition attendance or document production "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A) and (c)(2)(A). The purpose of Rule 45(c)'s 100-mile rule "is to avoid imposition of unreasonable travel burdens." *Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transportation*, 180 F. Supp. 3d 290, 293 (S.D.N.Y. 2016). Here, Amphenol is located within 100 miles of the place set for compliance, and it would not inconvenience the company to produce documents and send its corporate representatives 87 miles away. More importantly, to the extent Amphenol seeks to designate specific company witnesses who reside or are employed more than

100 miles from the place of compliance, Fractus is more than willing to accommodate them in a convenient location, as it has done with numerous party and third-party witnesses throughout the underlying litigation.

The cases Amphenol cites in support of its position are inapposite. In *Wultz v. Bank of China Ltd.*, the employees in question resided in Israel, and the moving party insisted that the third party bring those employees to this district. 293 F.R.D. 677, 679-80 (S.D.N.Y. 2013). Similarly, in *Price Waterhouse LLP v. First Am. Corp.*, the employees in question resided in the United Kingdom, and the moving party demanded that the third party bring them to New York. 182 F.R.D. 56, 62 (S.D.N.Y. 1998). Here, by contrast, far from insisting that Amphenol bring its witnesses to this district, Fractus has repeatedly but unsuccessfully sought to meet and confer with Amphenol in order to arrange the deposition in whatever place or places are most convenient for the witnesses Amphenol designates. For all these reasons, the motion to quash should be denied.

## II.     Amphenol Should Be Required to Produce the Technical Information Sought in the Subpoena

Amphenol has repeatedly refused to produce subpoenaed technical documents for the antenna models Fractus first called to its attention in its January 9, 2019 correspondence—documents central to Fractus's ability to demonstrate infringement by the Carrier Defendants. Specifically, Fractus has sought "[d]ocuments such as drawings, schematics, diagrams, datasheets, blueprints and/or electromagnetic simulation files, sufficient to identify the following characteristics" of the accused antenna models:

> a.   the arrangement of the antenna arrays and their antenna elements;
>
> b.   the structure of the antenna arrays and their antenna elements;
>
> c.   the size of the antenna arrays and their antenna elements;

    d.  the spacing between antenna arrays, as well as the spacing between antenna elements;

    e.  the shape of the antenna elements;

    f.  the frequency ranges and frequency bands at which the antenna arrays and each individual antenna element within the arrays is capable of operation;

    g.  the polarizations, gain, radiation patterns and impendence and impedance patterns, and electrical downtilt capabilities associated with the antenna arrays;

    h.  the types of cellular telecommunications networks and systems that the antenna is capable of servicing (e.g., GPRS, EDGE, CDMA, GSM, EV-DO, LTE, TDMA, UMTS, HSPA, HSPA+);

    i.  the mechanical specifications of the antenna and the antenna arrays (and their antenna elements), such as their dimensions, material specifications, and any modular systems to adjust height; and

    j.  the type of distribution network which would be employed to excite the antenna elements of the antenna arrays.

Burton Dec., Ex. 4 at Attachment A at 5-6. This technical information tracks the language of the Patents-in-Suit and is essential to Fractus's infringement case. *See Ferguson*, 268 F.R.D. at 155 (relevance includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is ***or may be*** in the case" (emphasis added)). During the parties' teleconferences and in correspondence, Amphenol never contended that the bulk of this information was not relevant and indeed produced such information—except for the requested simulation files and element-level information, addressed below—for the antenna models Fractus originally identified, never previously contending that locating it posed an undue burden. *See id.* ("the objecting party bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each

question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.")

Initially, Amphenol contended it should not be required to produce these documents because the newly-identified antennas are currently not "in the case." Burton Dec., Ex. 9 at 3-4. However, Fractus discovered that these antenna models infringed the Patents-in-Suit only after receiving from the Carrier Defendants highly confidential information sufficient to make an infringement accusation. Furthermore, as soon as Fractus confirmed its good faith belief that the relevant antenna models infringed, it promptly served updated infringement claim charts on the Carrier Defendants and moved the court at the end of January for leave to formally serve its revised infringement contentions. It is therefore quite possible, and even plausible to expect, that Fractus's motion will be granted, thereby placing these antennas in the case. *See Ferguson*, 268 F.R.D. at 155 (relevant documents are those that relate to "any issue that is ***or may be in the case***") (emphasis added). Moreover, Amphenol was not entitled unilaterally to determine which antenna models are or are not "in the case" or to delay production until after the court rules on Fractus's motion, especially when discovery is set to close on April 15.

In any event, even those unavailing excuses no longer apply, as the Eastern District of Texas has rendered them moot by granting Fractus's motion to amend its infringement contentions. *See* Burton Dec., Ex. 12.  Specifically, the Court concluded that "Fractus has met its burden of establishing good cause to amend its infringement contentions particularly in light of its diligence in the identification of new accused products and the notice given by the expansive categories of products originally identified in its Initial Contentions." *Id.* at 6. The Eastern District of Texas further held that "Fractus began amending its contentions on a rolling basis from the beginning of December until the filing of the instant motion, which mitigates any prejudice to the Carrier

Defendants and CommScope and evidences good faith by Fractus." *Id.* As the Court recognized, Fractus has been diligently amending its contentions and consistently providing notice to all parties, notwithstanding Amphenol's strained arguments to the contrary.

Additionally, Amphenol contends that it need not produce certain technical information for *any* antennas "on an individual element" level because Fractus never originally requested such information. Burton Dec., Ex. 9 at 3-4 However, Fractus specifically identified antenna elements in eight out of ten subcategories for which it seeks documents. Burton Dec., Ex. 4 at 5-6.  Thus, Amphenol's refusal to produce such information on this basis lacks merit.

Finally, Amphenol argues it should not have to produce simulation files for *any* of the accused antenna models because it believes certain datasheets it produced are sufficient for Fractus's purposes. However, Amphenol is not entitled to decide which information in its possession, custody or control is or is not important to Fractus's case, and in fact the simulation data Fractus seeks provides important information over and above the datasheet information Amphenol previously produced. For instance, simulation data can cast light on disputed issues of infringement such as whether an antenna element is a "multiband" element and whether it is operable in frequency ranges claimed by the patents-in-suit. *See Ferguson*, 268 F.R.D. at 155.

For all these reasons, Amphenol should be required to produce all of the technical information sought in the subpoena for all accused antenna models and at the requested level of detail.

### III.    Amphenol Should Be Required to Produce the Sales and Marketing Information Sought in the Subpoena

In the subpoena, Fractus requested Amphenol produce the following highly relevant sales and marketing information:

3. Your sales and marketing communications concerning multiband base station antennas, since one year before your first sale of such an antenna to any Defendant, including but not limited to sales and marketing communications sent or presented to Defendants.

4. All contracts and agreements with the Defendants concerning your sale of multiband base station antennas and/or your maintenance, service, installation and repair of any such antenna.

5. Documents sufficient to identify your revenues (by year and, if available, by product) collected from Defendants for any service related to the antennas responsive to Request 1, including maintenance, service, installation and repair of any such antenna.

Burton Dec., Ex. 4 at Attachment A at 6. This information will form a crucial part of Fractus's damages case as well as its efforts to prove infringement.

Yet Amphenol refuses to produce this information for *any* of the accused antenna models on the ground that "the carrier defendants will have copies of whatever marketing materials Amphenol provided" and because "Amphenol, as a third party, should not be forced to provide such documents." Burton Decl., Ex. 9 at 4.  However, this argument runs counter to numerous cases in which courts have granted motions to compel over precisely such objections. For instance, in *LG Display Co. v. Chi Mei Optroelectronics Corp.*, the court granted the patent-holder's motion to compel a third party's compliance with the patent-holder's document subpoena. No. 08-cv-02408 (POR), 2009 WL 223585, at *1 (S.D. Cal. Jan. 28, 2009). The court rejected the third party's arguments that the subpoena was overly broad and sought irrelevant documents. *Id.* at *2. The third party further argued that "the documents sought by Plaintiff's Subpoena are duplicative in that these documents are readily attainable from the defendants in the underlying matter." *Id.* at *3. However, the court found "this argument unavailing, particularly in light of Plaintiff's desire to test the accuracy and completeness of the defendants' discovery responses and their denials that additional information exists." *Id* at *4.

Similarly, in *High Point Sarl v. Sprint Nextel Corp.*, the court granted the patent-holder's motion to compel compliance with the patent-holder's subpoena by Ericsson, a third-party manager of defendant Sprint's cellular network. No. 09 Civ. 2269 (CM) (DJW), 2011 WL 124534, at *1 (D. Kan. Jan. 14, 2011). The subpoena included requests for, *inter alia*, "documents related to the design, operation, structure, function, configuration or installation of Sprint's CDMA network or any component of Sprint's CDMA network provided by Sprint to Ericsson" and "documents sufficient to identify all major elements that are or have been a part of Sprint's CDMA network." *Id.* In response, "Ericsson argue[d] that High Point should be required to first obtain the subpoenaed documents from Sprint before seeking the documents from Ericsson so as to avoid imposing undue burden or expense on Ericsson." *Id.* However, the court held that, "in the interest of judicial economy and efficiency, Ericsson, the contractual custodian of the subpoenaed documents, should comply with the subpoena and provide High Point [with] all responsive documents. The Court sees no undue burden or expense that would require High Point to first seek these documents from Sprint." *Id.* at *3; *see also Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 09-80129, 2008 WL 3876142, at *3 (N.D. Cal. Aug.18, 2008) (granting motion to compel third-party production and finding "[t]here is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession."); *Software Rights Archive, LLC v. Google Inc.*, Misc. No. 09-017 (JJF), 2009 WL 1438249 (D. Del. May 21, 2009) (granting motion to compel third-party document subpoena and finding "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party" (quoting *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, No. 4:08-mc-00017 (JLH), 2008 WL 4853620, at *2 (E.D. Ark. Nov. 6, 2008)).

14

Here, as in *LG Display Co.* and *High Point*, for those documents of the type Fractus could obtain (and in some cases has obtained) from the Carrier Defendants, Fractus is entitled to "test the accuracy and completeness of the defendants' discovery responses and their denials that additional information exists." *LG Display Co.*, 2009 WL 223585, at *3. Indeed, Fractus has encountered numerous discrepancies—many of them highly consequential—between documents produced by the Carrier Defendants and those produced by third parties like Amphenol, especially sales documents. Burton Dec. at ¶ 16.  Fractus has invested substantial resources in attempting to reconcile this conflicting information, and, in order to obtain a complete picture, requires sales and marketing information from both the Carrier Defendants and Amphenol.  In addition, for many of these sales and marketing documents, Amphenol, not the Carrier Defendants, is either the *only* party in possession, custody or control of the information or the "contractual custodian of the subpoenaed documents" and should therefore be required to produce them. *High Point Sarl*, 2011 WL 124534, at *1.

Accordingly, Amphenol should be required to produce the sales and marketing information sought in the subpoena.

**IV.    Amphenol Should Be Required to Produce the Communications Sought in the Subpoena**

Finally, in the Subpoena, Fractus seeks "[c]ommunications mentioning Fractus or any of the patents-in-suit, including communications with the Defendants." Here, again, Amphenol has refused to produce such communications with the Carrier Defendants from before commencement of the litigation on the same basis set forth above, i.e. that "the carrier defendants will have copies of whatever pre-suit communications Amphenol had with the carrier defendants regarding Fractus." Burton Dec., Ex. 9 at 4. But for the same reasons set forth above, this justification lacks merit. In addition, Amphenol has not articulated any reason why it should not produce other

communications regarding Fractus or the Patents-in-Suit that do not involve the Carrier Defendants. Amphenol should be required to produce these communications, too.

V.      **Amphenol Should Be Required to Produce a Witness to Testify About the Topics Recited in the Subpoena**

For all the same reasons, Amphenol should be required to produce a witness or witnesses to testify about the topics set forth in the subpoena. This testimony will shed further light on the documents Amphenol has produced and will produce and on the critical relevant issues in the case. Fractus has repeatedly expressed its willingness to ease any burdens on Amphenol and its employees and has sought on numerous occasions to meet and confer with Amphenol in order to do so. Yet instead, unlike the four other antenna manufacturers in this case who have all complied with Fractus's subpoenas by producing documents and witnesses on terms convenient for them, Amphenol steadfastly refuses to comply with its discovery obligations, instead engaging in motion practice across numerous districts. This gamesmanship must stop, and Amphenol must fulfill its obligations.

## <u>CONCLUSION</u>

For all the reasons set forth above, Fractus respectfully requests that the Court deny Amphenol's Motion to Quash and grant Fractus's Cross-Motion to Compel.


Dated: New York, New York     Respectfully submitted,
   April 2, 2019

             KOBRE & KIM LLP

        By: */s/ Clinton J. Dockery*
            Clinton J. Dockery
            800 Third Avenue
            New York, New York 10022
            clinton.dockery@kobrekim.com

            *Attorney for Plaintiff Fractus, S.A.*