UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/19/19

AMPHENOL CORPORATION,

                              Petitioner,

          -v-

FRACTUS, S.A.,

                              Respondent.

19 Misc. 160 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision arises out of a patent action in the Eastern District of Texas, *Fractus, S.A. v. AT&T Mobility LLC, et al.*, No. 2:18-cv-00135 (JRG) (E.D. Tex.) (the "underlying action"). Petitioner Amphenol Corporation ("Amphenol"), a nonparty in that action, moves to quash two sets of subpoenas issued by respondent Fractus, S.A. ("Fractus"), the plaintiff in that litigation. Fractus cross-moves to compel compliance with those subpoenas.

For the reasons that follow, as to the subpoenas that Fractus served on Amphenol on March 4, 2019, the Court denies Amphenol's motion to quash and grants Fractus's motion to compel. As to the subpoenas that Fractus served on March 26, 2019, the Court holds the motions in abeyance pending resolution of the earlier-filed action concerning almost identical subpoenas pending in the District of Connecticut.

I.    **Background**[1]

      A.    **The Underlying Litigation**

      In the Complaint filed in the underlying action, Fractus, a Spanish antenna technology innovator, Compl. ¶ 1, alleges that defendant AT&T Mobility ("AT&T") infringed Fractus's

[1] The Court draws its account of the facts, which are largely undisputed, from the Complaint in the underlying action, Dkt. 15-2 ("Compl."), and the declarations submitted by each party with

1

patents for certain components of high-performance antennas. On April 9, 2018, the same date

that Complaint was filed, Fractus also filed complaints against the three other major U.S. cellular

carriers—Verizon, T-Mobile, and Sprint (together with AT&T, the "Carrier Defendants")—for

patent infringement in connection with their antennas. Burton Decl. ¶ 3. On May 30, 2018, all

four cases were consolidated for pretrial supervision, with the underlying action identified as the

lead case. No. 2:18-cv-00135 (JRG) (E.D. Tex.) at Dkt. 19.

The Complaint alleges that AT&T's antennas infringe on 10 separate patents held by

Fractus. Compl. ¶¶ 36–135. AT&T sources these antennas, the Complaint alleges, from third-

party antenna manufacturers, including Amphenol. *Id.* ¶ 26. Fractus's Complaint identifies

Amphenol's "Amphenol 6890300" as one of two "exemplary antenna[s]" that contain allegedly

infringing components. *Id.* ¶¶ 28–31.

### B. The Rounds of Subpoenas and Motions in Other Courts

#### 1. July 25, 2018 Subpoena

On July 25, 2018, Fractus served its first subpoena on Amphenol, designating as the

place of production the San Francisco office of Fractus's counsel, Kobre & Kim, LLP. Burton

Decl. Ex. 4 ("July 25, 2018 Subpoena"). Fractus claims to have chosen this location "out of

courtesy to Amphenol's counsel, whose offices are in Palo Alto, California." Dkt. 15 ("Resp't

Mem.") at 3.

The July 25, 2018 Subpoena contained eight document requests, seeking documents as to

every multiband base station antenna sold by Amphenol in the United States; "drawings,

schematics, diagrams, datasheets, blueprints and/or electromagnetic simulation files" sufficient

accompanying exhibits: Amphenol's declarations from Richard G. Frenkel, Esq., Dkt. 3
("Frenkel Decl."), and Justin Riek, Dkt. 5 ("Riek Decl."); and Fractus's declaration from Luke J.
Burton, Esq., Dkt. 15-1 ("Burton Decl.").

to identify certain characteristics of each antenna model; sales and marketing communications concerning the antennas; contracts and agreements with the Carrier Defendants concerning sales and maintenance of the antennas; revenues collected from the Carrier Defendants in connection with the antennas; patent licenses related to "multiband base station antenna technology;" documents concerning indemnification relating to the Carrier Defendants or patent-in-suit; and communications mentioning Fractus or any patent-in-suit. July 25, 2018 Subpoena Attach. A. On August 2, 2018, Fractus sent Amphenol a list of 95 accused Amphenol antennas that were implicated by its infringement allegations. Burton Decl. ¶ 8; *id.* Ex. 8.

On August 31, 2018, Amphenol served objections to all eight document requests, objecting, *inter alia*, to the definition of certain terms, to the phrase "multiband base station antenna" as vague and ambiguous, to the lack of time limitation, and to seeking documents available from the Carrier Defendants. Burton Decl. Ex. 6. Fractus did not respond to the objections. Frenkel Decl. ¶ 6. Amphenol claims that it offered to meet and confer regarding the scope of requests, but that Fractus did not respond. Dkt. 2 ("Pet'r Mem.") at 7.

In response to the July 25, 2018 Subpoena, Amphenol produced more than 37,000 documents, and completed its rolling production on November 13, 2018. Frenkel Decl. ¶ 7. On December 2, 2018, upon request, Amphenol re-sent its production. *Id.* Ex. D (email exchange between counsel for Amphenol and Fractus) at 2. On December 20, 2018, upon request, Amphenol provided additional metadata relating to its previous production, as well as newly-identified "model number guides" for its base station antennas. *Id.* at 1–2.

On January 9, 2019, counsel for Fractus sent an email to counsel for Amphenol requesting schematics for more than 40 antenna models that Fractus had "been unable to locate" in the existing production. Burton Decl. Ex. 7. This list mostly contained antenna models not

identified in the August 2, 2018 list.[2] *See* Resp't Mem. at 4 (January 9, 2019 list contained "a limited number of certain models of accused antennas that had been on Fractus's initial list, as well as certain newly accused antenna models whose infringement Fractus had discovered upon review of the Carrier Defendants' discovery"); Pet'r Mem. at 8 ("[O]nly eight antennas overlapped with those in Fractus's infringement contentions and over 80% were not identified in Fractus's infringement contentions."). Amphenol claims that, on January 11, 2019, counsel for Fractus emailed counsel for Amphenol a deficiency notice for, *inter alia*, its failure to include these schematics. Pet'r Mem. at 8; *see also* Frenkel Decl. Ex. F at 2 (summarizing January 11, 2019 communication).[3]

On January 18, 2019, and January 24, 2019, Fractus and Amphenol met and conferred telephonically. Burton Decl. ¶ 11; Frenkel Decl. ¶ 16. Fractus represented that the newly-identified antennas were "in the case." Frenkel Decl. 17. Amphenol indicated that it would not produce information for the newly-identified antenna models because they "were not in the case." Burton Decl. ¶ 11.

On January 24, 2019, counsel for Amphenol sent counsel for Fractus a letter memorializing their meet-and-confers relating to the July 25, 2019 Subpoena and asking that Fractus withdraw its requests. Frenkel Decl. Ex. F. Amphenol asserted that Fractus's requests for the newly-identified antennas were improper because the antennas were not yet formally

---

[2] Amphenol claims that it was not until January 16, 2019, that Fractus first identified the newly-accused antennas through infringement contentions served on Verizon Wireless. Frenkel Decl. ¶ 19. Fractus counters that "[s]ince the outset of the litigation, Fractus has timely provided the Carrier Defendants with updated infringement claim charts as it prepared them upon receipt of their confidential information," Resp't Mem. at 4 n.1, but it has not elaborated as to the timing of such productions.

[3] The Court has been unable to locate a copy of the alleged January 11, 2019 deficiency notice in the documents provided. Fractus does not appear to contest its existence.

within the scope of the case, that Fractus had incorrectly identified Amphenol's production as deficient to the extent it implicated categories of documents not requested by the July 25, 2018 Subpoena, and that Fractus had incorrectly accused Amphenol of failing to produce documents that Amphenol had in fact produced. *Id.* at 2–3. Fractus represents that there followed a "further exchange of emails" in which "the parties were unable to resolve these issues." Resp't Mem. at 5. Amphenol claims that, "[o]ther than confirming that it would not withdraw its requests, Fractus did not communicate further with Amphenol regarding its requests." Pet'r Mem. at 10.

On January 30, 2019, Fractus filed a motion for leave to amend its infringement contentions to include the newly-identified antennas. No. 2:18-cv-00135 (JRG) (E.D. Tex.), Dkt. 151. On February 13, 2019, the Carrier Defendants opposed the motion. *Id.* Dkt. 172. On February 20, 2019, Fractus replied. *Id.* Dkt. 195. The same day, the Carrier Defendants filed a sur-reply to "notify the Court that, last night, February 19, 2019, Fractus notified [the Carrier] Defendants that it would be serving *yet another set of infringement claim charts* on each Defendant . . . [although] Fractus did not seek leave to amend its infringement contentions to include these new charts." *Id.* Dkt. 200 at 2. On March 21, 2019, the Eastern District of Texas court granted Fractus's motion, finding good cause to permit Fractus to amend its infringement contentions. *Id.* at Dkt. 225. The court noted that "the Amended Contentions significantly narrow the case" and that "these new added products are essential to Fractus's case." *Id.* at 5. The court further found that "the new products are either wholly within the product families already disclosed or not materially different from those already disclosed," and that "Fractus began amending its contentions on a rolling basis from the beginning of December until the filing of the instant motion." *Id.* at 6.

### 2.      Motion in the District of Connecticut

On February 25, 2019, before the Eastern District of Texas had ruled on Fractus's motion

for leave to amend its infringement contentions, Fractus moved, in the District of Connecticut,

where Amphenol's corporate headquarters are located, to compel Amphenol's compliance with

the July 25, 2018 Subpoena. *See Fractus, S.A. v. Amphenol Corp.*, No. 3:19-mc-00024-AWT

(D. Conn.); Frenkel Decl. ¶ 23.  In moving to compel Amphenol to produce information as to the

newly-identified antennas, Fractus argued that "Amphenol is not entitled unilaterally to

determine which antenna models are or are not 'in the case' or to delay production until after the

court rules on Fractus's motion, especially when discovery is set to close in less than two

months." No. 3:19-mc-00024-AWT (D. Conn.), Dkt. 1-1.  Fractus further asked that Amphenol

produce sales and marketing materials as well as Amphenol's communications mentioning

Fractus or the patents-in-suit with the Carrier Defendants.  Amphenol had refused to produce

these on the grounds that such discovery was available from the Carrier Defendants.  *Id.* at 10–

13.

On March 18, 2019, Amphenol opposed the motion, arguing both that Fractus had filed

its motion to compel in the wrong district, and that its requests to nonparty Amphenol were

unduly burdensome to a nonparty.  No. 3:19-mc-00024-AWT (D. Conn.), Dkt. 7.  On March 27,

2019, Fractus replied.  *Id.* Dkt. 18.  On April 1, 2019, the District of Connecticut granted

Amphenol's motion for leave to file a sur-reply, *id.* Dkt. 20, which Amphenol filed, *id.* Dkt. 21.

On June 7, 2019, Fractus moved for leave to file supplemental briefing.  *Id.* Dkt. 29.  On June 10,

2019, Amphenol opposed this motion.  *Id.* Dkt. 30.  Both the motion to compel and the motion

for leave to file supplemental briefing remain pending.

### 3. March 4, 2019 Subpoena

On March 4, 2019, Fractus served two new subpoenas on Amphenol. Frenkel Decl.
Ex. G ("March 4, 2019 Subpoena"). The two are identical except that they specify different
addresses for Amphenol: one in Wallingford, CT, and the other East Hartford, CT. *See id.* The
subpoenas seek testimony as well as document production; they set the New York office of
Fractus's counsel, Kobre & Kim LLP, as the site of compliance. *See id.* The March 4, 2019
Subpoena's request for documents identified six categories of documents relevant to antenna
models identified in an exhibit to the subpoenas, including schematics, testing files and
electromagnetic simulation files, and marketing materials. *See id.* The Subpoena's deposition
notice identified 23 areas in which testimony was sought, including as to the structure and
operation of each identified antenna model, the sales, pricing methodology, and profits for the
antenna models, and information as to the methods of collection that Amphenol has used for its
previous production and as to abbreviations Amphenol has used there. *See id.*

### 4. March 8, 2019 Subpoena

On March 8, 2019, Fractus served a subpoena on Amphenol Antenna Solutions, Inc.
Frenkel Decl. Ex. H ("March 8, 2019 Subpoena"). The March 8, 2019 Subpoena listed, for this
entity, an address in Chicago, IL. *See id.* It sought production of "[t]he external and internal
structures of the base station antennas" listed as well as the elements those antennas used, *id.*
Ex. A, and listed as the place of compliance the San Francisco office of Fractus's counsel, *see*
March 8, 2019 Subpoena.

### 5. March 26, 2019 Subpoenas

On March 26, 2019, counsel for Fractus emailed counsel for Amphenol to inform them
that Fractus was withdrawing its March 8, 2019 Subpoena. *See* Frenkel Decl. Ex. I. Fractus
further advised that it would be re-serving identical subpoenas to its July 25, 2018 and March 4,

2019 Subpoenas[4] with a revised place of compliance. *See id.* The attached subpoenas revised

the places of compliance for Amphenol Antenna Solutions to Fractus's counsel's Chicago, IL

office, and for Amphenol Corporation to Fractus's counsel's New York City office. *See* Frenkel

Decl. Ex. J ("March 26, 2019 Subpoenas").

### 6.    Motion in the Northern District of California

On March 22, 2019, both Amphenol entities—Amphenol Corporation and Amphenol

Antenna Solutions—together moved to quash Fractus's March 4, 2019 and March 8, 2019

Subpoenas in the Northern District of California. *See In re Subpoenas to Testify at a Deposition*

*in a Civil Action*, 3:19-mc-80072-JSC (N.D. Cal.), Dkt. 1. In a March 26, 2019 email to

Amphenol's counsel, Fractus's counsel stated that it intended to notify the Northern District of

California that Amphenol's motion to quash, in that district, was moot in light of Fractus's

changes to the Subpoenas' places of compliance. Frenkel Decl. Ex. I. In Fractus's opposition to

Amphenol's motion, filed April 2, 2019, it so argued as to the March 4, 2019 and March 8, 2019

Subpoenas. However, it cross-moved to compel Fractus's compliance with the July 25, 2018

Subpoena. *See* 3:19-mc-80072-JSC (N.D. Cal.), Dkt. 13.

On April 4, 2019, the Northern District of California denied Amphenol's motion to quash

as moot. It held Fractus's motion to compel in abeyance pending disposition of the same earlier-

filed motion to compel in the District of Connecticut. *See id.* at Dkt. 17. Fractus's motion to

compel in the Northern District of California remains pending, as does its motion to compel in

the District of Connecticut.

---

[4] The email specifies a "July 3, 2018" subpoena, Frenkel Decl. Ex. I, but because neither party
has advised the Court of the existence of a July 3, 2018 subpoena, the Court assumes that this
reference was to the July 25, 2018 Subpoena.

### C.     The Instant Motions

On March 29, 2019, Amphenol filed a motion in this Court to quash the March 4, 2019, and March 26, 2019 Subpoenas against Amphenol Corporation, insofar as each demands compliance in the Southern District of New York. Dkt. 1. Amphenol also filed a supporting memorandum of law, Dkt. 2, and accompanying declarations from Richard G. Frenkel, Esq., Dkt. 3, with exhibits, and Justin Riek, Dkt. 5. On April 1, 2019, Amphenol filed a letter motion requesting argument. Dkt. 9. Also on April 1, 2019, the Court set April 12, 2019, as Fractus's deadline to respond. Dkt. 12.

On April 2, 2019, Fractus filed a combined opposition motion and cross-motion to compel Amphenol to comply what the Court understands to be the same Subpoenas,[5] Dkt. 14, a supporting memorandum of law, Dkt. 15, and an accompanying declaration from Luke J. Burton, Esq., Dkt. 15-1, with accompanying exhibits. On April 3, 2019, the Court authorized Amphenol to file a combined reply and opposition brief by April 19, 2019. Dkt. 16. On April 17, 2019, on the consent of both parties, the Court granted an extension for Amphenol's combined reply and opposition brief until April 23, 2019. On April 23, 2019, Amphenol filed a combined reply and opposition. Dkt. 19 ("Pet'r Reply").

On June 7, 2019, Fractus filed a letter motion to expedite in consideration of a pending *Daubert* motion in the underlying action. Dkt. 21. On June 10, 2019, Amphenol filed a letter in opposition, claiming that, because discovery closed on April 15, 2019, any order from this Court compelling compliance with Fractus's subpoenas would violate the scheduling orders in the underlying action. Dkt. 23.

---

[5] Fractus does not identify the subpoena with which it moves Amphenol to comply other than as "[t]he Subpoena Amphenol seeks to quash and Fractus seeks to enforce." Resp't Mem. at 1. The Court infers that "the Subpoena" refers to the March 4, 2019 and March 26, 2019 Subpoenas that seek compliance in this District.

**D.     Status of Discovery and *Daubert* Proceedings in the Underlying Action**

Fact discovery in the underlying action closed on April 15, 2019.  That day, Fractus

moved the Eastern District of Texas to extend the fact discovery deadline to May 15, 2019, "for

third-party discovery solely with respect to Amphenol Corporation, American Tower

Corporation, and SBA Communications Corporation; to be extended if said discovery is not

resolved." Dkt. 21-1 at 8.  On April 18, 2019, the Eastern District of Texas denied Fractus's

motion without prejudice with "[l]eave . . . to refile the motion once Fractus has received what it

seeks by way of discovery elsewhere or when it has determined with certainty by what firm date

such pending discovery can and will be completed, if at all." *Id.* at 2.  The Eastern District of

Texas court noted that "discovery motions are currently pending against non-parties to this

action in the District of Connecticut, the Northern District of California, the Southern District of

New York, and the District of Massachusetts." *Id.* at 1.

On June 3, 2019, Cellco Partnership d/b/a Verizon Wireless ("Verizon"), one of the

Carrier Defendants, filed a *Daubert* motion to exclude portions of Fractus's expert's report.

Dkt. 21 at 2.  Fractus claims that Verizon's basis for this motion rests partially on the argument

"that Fractus cannot sustain its infringement allegations against Verizon with respect to

Verizon's Amphenol antennas because of the absence of the technical information Fractus seeks

through this motion [to compel]." *Id.*  Latham & Watkins, LLP represents both Amphenol in the

instant action and Verizon in its *Daubert* motion in the underlying action.  Dkt. 22 at 3.

Trial in the underlying action has been set for September 9, 2019, Dkt. 21 at 1, with a

pretrial conference scheduled for August 14, 2019, Dkt. 22 at 1.

**II.     Applicable Legal Standards**

Federal Rule of Civil Procedure 45(a)(1) allows a party to serve a subpoena on a non-

party for the production of documents.  *See* Fed. R. Civ. P. 45(a)(1).  Under Rule 45(d), the

subpoena recipient may move to quash or modify the subpoena if it "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)–(iv). Among the applicable geographical limits, a subpoena may be served only "within 100 miles of where the person resides, is employed, or regularly transacts business in person," Fed. R. Civ. P. 45(c)(1)(A), and may compel only the "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person," Fed. R. Civ. P. 45(c)(2)(A).

On a motion to quash, "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). "A subpoena that pursues material with little apparent or likely relevance to the subject matter . . . is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Kirschner v. Klemons,* No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (internal quotation marks and citation omitted).

The relevance standards of Federal Rule of Civil Procedure 26(b)(1) apply to discovery sought from non-parties. *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (citing *Malibu Media, LLC v. Doe*, No. 15 Civ. 3147, 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016)). Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering

the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The party seeking discovery bears the initial burden of proving the discovery is relevant." *Citizens Union of City of N.Y.*, 269 F. Supp. 3d at 139.

If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden. *See Griffith v. United States*, No. M8-85 (JFK), 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Night Hawk Ltd.*, 2003 WL 23018833, at *8. Where a subpoena seeks discovery from a non-party, the district court may consider factors such as the expense or inconvenience that compliance would cause. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996). The trial court has broad discretion to determine whether a subpoena imposes an undue burden. *See Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).

## III. Discussion

Amphenol argues that this Court should quash the March 4, 2019 and March 26, 2019 Subpoenas (together, the "Subpoenas") for two reasons. First, it argues, the Subpoenas demand that a deposition occur and that documents be produced beyond the 100-mile geographical limit specified in Rule 45(c). Pet'r Mem. at 15–17. Second, it argues, complying with the Subpoenas would be unduly burdensome because (1) Amphenol is a nonparty, (2) the requests duplicate Amphenol's earlier production, (3) the costs imposed by Amphenal's initial production and the ongoing litigation are already high, (4) Fractus could seek the same information from the Carrier

12

Defendants, and (5) Fractus has failed to take reasonable steps to avoid imposing undue burden and expense. *Id.* at 17–23.

Opposing the motion to quash and supporting its motion to compel, Fractus contends that Amphenol is located within 100 miles of the place the Subpoenas set for compliance. Resp't Mem. at 8–9. Fractus further argues that, because the Eastern District of Texas has granted Fractus's motion to amend its infringement contentions, the new antenna models are within the scope of the case and an appropriate subject for new third-party discovery, *id.* at 10–12, and that Fractus should be allowed discovery potentially duplicative of its discovery from the Carrier Defendants to enable it to check the accuracy of that production, *id.* at 12–15.

Because the March 26, 2019 Subpoenas are identical to the July 25, 2018 Subpoena, save as to the place of compliance, this Court will follow the lead of the Northern District of California and will hold in abeyance Amphenol's motion to quash and Fractus's motion to compel as to those subpoenas until the resolution of the earlier-filed action concerning the July 25, 2018 Subpoena in the District of Connecticut. The Court therefore addresses here only the March 4, 2019 Subpoenas, which, again, seek, from Amphenol, new discovery in the form of both deposition testimony and document production and attaches a new exhibit list of covered antennas.

## A.    Geographical Limitation

The March 4, 2019 Subpoenas are directed to "Amphenol Corporation, c/o The Corporation Trust Company." Each subpoena lists a different address for The Corporation Trust Company: either "385 Hall Avenue, Wallingford, CT, 06492" or "67 Burnside Avenue, East Hartford, CT, 06108-3408." The subpoenas are otherwise identical. The places of compliance are designated as "Kobre & Kim LLP, 800 Third Avenue, New York, NY 10022." Kobre &

Kim LLP's New York office is 99 miles from the East Hartford address, and 77 miles from the Wallingford address.

Amphenol does not contend that Kobre & Kim's New York office is more than 100 miles from either Connecticut address. Rather, Amphenol argues that "neither Amphenol Antenna Solutions, Inc., nor Amphenol Corporation are located in the Southern District of New York. Amphenol Antenna Solutions, Inc. is headquartered in ***Rockford, Illinois***, and Amphenol Corporation is headquartered in ***Wallingford, Connecticut***." Pet'r Mem. at 16. But the location of Amphenol Antenna Solutions, Inc., is irrelevant to the instant motions. That entity is subject to separate subpoenas compelling compliance in Illinois, not New York City. And Rule 45(d) does not require that a subpoena command deposition or production within the District in which the entity resides. It instead provides that the deposition site or the site of the document production be "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A); *id.* 45(c)(2)(A).

Amphenol claims, as to the deposition request, that "potential designees knowledgeable about the deposition topics outlined in Fractus's March 4, 2019 subpoenas would necessarily be located outside the Southern District of New York [and] that no corporate designee resides, works, or regularly transacts business in the Southern District of New York." Riek Decl. ¶ 4. But that claim is beside the point. The legally relevant question is whether any corporate designee resides, works, or regularly transacts business *within 100 miles* of Kobre & Kim, LLP's New York office. Amphenol has not denied that this is so. Further, Fractus represents that "to the extent Amphenol seeks to designate specific company witnesses who reside or are employed more than 100 miles from the place of compliance, Fractus is more than willing to accommodate them in a convenient location." Resp't Mem. at 9.

Because Amphenol has not put forward evidence that specific documents sought by the subpoena are located more than 100 miles from the place of compliance (Kobre & Kim's New York office) or that a corporate designee who would supply the testimony demanded by that subpoena would necessarily be located more than 100 miles from that place, the Court finds that Fractus's Subpoenas comply with Rule 45's geographical limitation requirement.

## B. Relevance

### 1. Marketing and Internal Pricing

The March 4, 2019 Subpoena contains six document requests and seeks deposition testimony on 23 topics. In arguing a lack of relevance, Amphenol challenges those portions of the March 4, 2019 Subpoena that "seek discovery for marketing materials, internal pricing and business methodologies, communications with [the Carrier] Defendants, Amphenol's internal organization structure, and services between Amphenol and Defendants" as irrelevant to the underlying action. *See* Pet'r Mem. at 17–19.

Amphenol specifically takes issue with the demand for deposition testimony on the following topics:

> 8.    Your pricing methodology for the multiband base station antennas that you sell (or sold) in the US during the relevant period. This includes, among other things, the structure of and basis for your prices, for any pricing formula, and/or for any component thereof.
>
> . . .
>
> 10.    How your multiband base station antennas were marketed and on what basis, including any pitches, materials or discussions that reference(d) the utilities or benefits of multiband base station antennas (such as the cost savings that multiband base station antennas may enable a purchaser or user to realize).
>
> . . .
>
> 13.    Your communications with any Carrier Defendants regarding the foregoing.
>
> . . .

17. Your organizational structure, as well as the personnel who designed, developed, tested, analyzed, sold, or marketed any aspect of the multiband base station antennas identified in Exhibit A.

18. Your awareness of any communications or discussions concerning Fractus or any of the patents-in-suit from August 2005 through the present, and the specifics of those communications or discussions.

19. Customer service and support and technical support provided to any Carrier Defendant with regard to Amphenol Multiband Base Station Antennas.

20. Your provision of maintenance, repair, upgrade and other services to AT&T, Spring, Verizon, and T-Mobile with regard to the Amphenol Multiband Base Station Antennas identified in Exhibit A.

21. Statements by You (both external and internal) and analyses by You concerning the significance to your business of being able to provide antennas on multiple frequency ranges and/or frequency bands.

. . .

23. Any communication with the Carrier Defendants about the foregoing topics.

March 4, 2019 Subpoena at 9–13; Pet'r Mem. at 18–19 (listing objections to these paragraphs).

As to document requests, Amphenol argues that Request No. 4 seeks irrelevant information. Pet'r Mem. at 18. It calls for production of: "All contracts and agreements with the Defendants concerning your sale of multiband station antennas and/or your maintenance, service, installation and repair of any such antenna." March 4, 2019 Subpoena at 9.

Fractus does not respond directly to this contention, focusing instead on the March 26, 2019 Subpoenas, as to which it moves to compel compliance. Nevertheless, Fractus's discussion covers the same concepts in substance, insofar as the March 26, 2019 Subpoenas seek production of the documents in the following categories:

3. Your sales and marketing communications concerning multiband base station antennas, since one year before your first sale of such an antenna to any Defendant, including but not limited to sales and marketing communications sent or presented to Defendants.

4.     All contracts and agreements with the Defendants concerning your sale of multiband base station antennas and/or your maintenance, service, installation and repair of any such antenna.

5.     Documents sufficient to identify your revenues (by year and, if available, by product) collected from Defendants for any service related to the antennas responsive to Request 1, including maintenance, service, installation and repair of any such antenna.

March 26, 2019 Subpoenas at 12. Fractus argues the documents and testimony it seeks as to these matters "will form a crucial part of Fractus's damages case as well as its efforts to prove infringement." Resp't Mem. at 13.

On relevance, the Court holds with Fractus. The information it seeks in the March 4, 2019 Subpoena is plainly relevant to Fractus's efforts to prove infringement and damages in the underlying action. Fractus's patent infringement claims are about antennas that Amphenol, among others, manufactures. Compl. ¶ 26. Fractus's Complaint, in fact, uses an Amphenol antenna as a representative example of an antenna sold which allegedly infringed on Fractus's patented technology. *Id.* ¶¶ 28–31. As part of its patent infringement claims, Fractus seeks to prove that the Carrier Defendants "mak[e], us[e], sell[], offer[] to sell, and/or import[] products or services that infringe the Patents—including the Infringing Antennas," *id.* ¶ 38, "ha[ve] actively induced and continue[] to actively induce others to directly infringe the [Patents] by making, using, selling, offering to sell, and/or importing the Infringing Antennas," *id.* 40, and "[t]o the extent [the Carrier Defendants] do[] not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendant and is [sic] used by Defendant in providing cellular services," *id.* ¶ 39. It follows that the details of the relationship between Amphenol and the Carrier Defendants—including as to marketing, structure, pricing, ownership, and maintenance—are plainly germane, and indeed important, to Fractus's infringement claims and to the calculation, assuming liability, of damages.

The principal case on which Fractus relies, *LG Display Co., Ltd. v. Chi Mei Optroelectronics Corp.*, No. 08cv2408-L (POR), 2009 WL 223585 (S.D. Cal. Jan. 28, 2009), Resp't Mem. at 13, is apposite. The underlying patent infringement action there concerned liquid crystal display ("LCD") products and methods of manufacturing. *LG Display Co.*, 2009 WL 223585, at *1. LG Display, the plaintiff in the infringement action, sought documents and testimony from nonparty Sony Electronics pertaining to Sony Electronics' business relationships with defendants in the underlying matter. *Id.* Sony Electronics moved to quash the subpoena, including by claiming a lack of relevance. The district court, however, held that "[i]nformation as to Sony Electronics' interactions with the defendants in the underlying action is directly relevant to Plaintiff's inducement and infringement claims." *Id.* at *2. It ultimately ordered that Sony Electronics produce "all responsive documents as to the repair and replacement of LCD panels [and] all responsive documents concerning the sales and purchase of LCD panels that are under its control." *Id.* at *4. The relationship between the nonparty here, Amphenol, and the defendants in the underlying infringement action here is fairly likened to the relationship at issue between Sony Electronics and the infringement defendants in *LG Display Co.*

Amphenol, for its part, relies on *Free Stream Media Corp. v. Alphonso Inc.*, No. 17-cv-02107-RS (KAW), 2017 WL 6209309 (N.D. Cal. Dec. 8, 2017). *See* Pet'r Mem. at 18. There, plaintiff Free Stream Media Corp. ("Free Stream") brought patent infringement claims, and subpoenaed documents from nonparty Shazam Media Services, Inc. ("Shazam"), on the basis that Shazam technology, through an app, constituted "prior art" to the patent asserted in the underlying action, bearing on the validity of Free Stream's patent. *See id.* at *1, *5. The court found Free Stream's requests for financial and business relationships between Shazam and the defendants in the underlying action irrelevant because it was "unclear how these topics are

related to prior art." *Id.* at *6. The infringement claims in this case are different. They arise out of the business relationship between the Carrier Defendants and the manufacturer of many of the allegedly infringing antennas. The documents that infringement plaintiff Fractus seeks are directly relevant to both the liability and damages analysis of these claims.

The Court accordingly finds that the topics reviewed above in the March 4, 2019 Subpoenas are relevant and discoverable.

### C.    Undue Burden

Amphenol broadly moves to quash the March 4, 2019 Subpoenas on the ground that they impose an undue burden on it, a non-party. It argues that the production request as to the newly-identified antennas is unreasonably cumulative given Amphenol's compliance with Fractus's July 25, 2018 Subpoena, Pet'r Mem. at 19–20; that it would impose significant costs, *id.* at 20; that Fractus could more efficiently seek the same documents and information from the Carrier Defendants, *id.* at 20–21; and that Fractus has failed to take reasonable steps to avoid imposition of these burdens and costs, *id.* at 21–23. The Court addresses these contentions together.

First, the Court finds, with the Eastern District of Texas, that Fractus has not acted unreasonably. Amphenol completed its rolling production on November 13, 2018, and Fractus was demonstrably still sorting through that initial production and in contact with Amphenol's counsel as of December 20, 2018. On January 9, 2019, Fractus sent Amphenol a revised list of antennas, which included new ones. Although Fractus could have highlighted the point better, its failure to do so does not make its revised list unreasonable. The Eastern District of Texas found, when evaluating Fractus's efforts to inform the various defendants and nonparty manufacturers in the underlying case of the products it intended to add, that "Fractus began amending its contentions on a rolling basis from the beginning of December until the filing of the instant motion [on January 30, 2019], which mitigates any prejudice to the Carrier Defendants

. . . and evidences good faith by Fractus." No. 2:18-cv-00135-JRG, Dkt. 225 at 6. The Eastern District of Texas was "satisfied that . . . the new products are either wholly within the product families already disclosed or not materially different from those already disclosed." *Id.* Likewise, this Court does not perceive a basis to fault Fractus for its lack of omniscience, at the outset of the underlying action and before discovery, as to all antennas potentially implicated by the alleged infringement. While Amphenol infers that as of November 2018 Fractus was aware of the newly-identified antennas, Pet'r Mem. at 19, even crediting this supposition, the Court does not perceive meaningful prejudice to Amphenol from the fact that Fractus added these to its discovery demands less than two months later.

Second, the Court finds that Amphenol has not come forward with solid evidence that responding to the March 4, 2019 Subpoena will subject it to unreasonable costs. Amphenol states that it has spent "months collecting and producing over 37,000 documents, and has further incurred additional legal fees having to respond to Fractus's multiple requests, meet and confers, improper deficiency notices, and now ***thirteen*** total subpoenas ***and*** a motion to compel." Pet'r Mem. at 20. Simply put, this data, in the Court's experience, is not indicative of an unreasonable burden, given the nature of the allegations here and Amphenol's alleged role in selling antennas that infringe on Fractus's patents. In any event, while the number of subpoenas is less important than the compliance burden they occasion, by the Court's count, Amphenol's tally double counts duplicative subpoenas, a number of which were occasioned by issues relating to proper venue. By the Court's tally, Fractus has served only two substantively different subpoenas on Amphenol Corporation, the petitioner in this action.[6] The one subpoena at issue here, the March 4, 2019

---

[6] The 13 subpoenas described by Amphenol appear also to count subpoenas served on Amphenol Antenna Solutions, not a party to this action. As to Amphenol Corporation, Fractus served one initial subpoena on July 25, 2018; two subpoenas on March 4, 2019, which requested additional

Subpoena, does not, in the Court's assessment, subject Amphenol to unreasonable costs by requesting a deposition and discovery tightly focused on a limited number of newly-identified antennas.

Third, that Fractus may be able to seek discovery (some likely overlapping) on these subjects from the Carrier Defendants does not preclude Fractus from seeking such discovery from Amphenol. Fractus represents that it has "encountered numerous discrepancies between technical, sales and marketing documents produced by the Carrier Defendants and those produced by third-party antenna providers like Amphenol." Burton Decl. ¶ 16. Given Amphenol's important role in this controversy—as a result of its business dealings with the Carrier Defendants involving allegedly infringing antennas it manufactured—the materials that Fractus seeks are important to efforts to prove infringement and damages. It is, therefore, not unreasonable for Fractus to seek information relevant to these central issues from Amphenol, even if some of it may prove duplicative. As in *LG Display Co.*, it is appropriate for Fractus to "test the accuracy and completeness of the defendants' discovery responses and their denials that additional information exists." 2009 WL 223585, at *3; *see also High Point Sarl v. Sprint Nextel*

---

antennas and a deposition, and were identical except for different Connecticut addresses; and another two on March 26, 2019, which were identical to the initial July 25, 2018 Subpoena except for listing New York as the place of compliance, and which included two different Connecticut addresses for Amphenol. Aside from the changing addresses of Amphenol Corporation and the places of compliance, Fractus therefore served only two substantively different subpoenas on Amphenol Corporation.

Fractus claims, as its explanation for these rounds of subpoenas, that it was seeking further information about newly-identified antennas and repeatedly revised the place of compliance in order to try to find one convenient to Amphenol. *See* Resp't Mem. at 4–5. The Court notes that although Amphenol claims this District is the wrong one for compliance, it does not specify which would be the *right* district. It has argued in both the District of Connecticut, No. 3:19-mc-00024-AWT (D. Conn.), Dkt. 7 at 17–18, and the Northern District of California, No. 3:19-mc-80072-JSC (N.D. Cal.), Dkt. 1 at 11–12, that those venues are improper.

*Corp.*, No. 09-2269-CM-DJW, 201 WL 124534, at *3–4 (D. Kansas Jan. 14, 2011) (granting motion to compel third-party's compliance with a subpoena as to the design, operation, and structure of defendant Sprint's cellular network in a patent action , even though documents were available from Sprint, "in the interest of judicial economy and efficiency . . . [because] [t]he Court sees no undue burden or expense that would require [plaintiff] to first seek these documents from Sprint"); *Visto Corp. v. Smartner Info. Sys., Ltd.*, Nos. 06-80339 MISC RMS (RS), 06-80352 MISC RMW (RS), 2007 WL 218771, at *3 (N.D. Cal. Jan. 29, 2007) ("[I]n appropriate circumstances, production from a third party will be compelled in the face of an argument that the 'same' documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions.").

The cases on which Amphenol relies are, again, inapposite. *See* Pet'r Mem. at 20–21. In *N'Diaye v. Metro. Life Ins. Co.*, No. 17 Civ. 4260 (GBD) (BCM), 2018 WL 2316335 (S.D.N.Y. May 8, 2018), the court placed special weight on the fact that "here, a party has opted to seek documents from non-parties, via subpoena, without first attempting to compel its adversary to produce the same documents," *id.* at *7. The court emphasized that, although "plaintiff asked [defendant] for some [of the documents] in his party document requests, . . . [he] failed to pursue those requests after receiving defendant's initial responses, and never moved to compel further responses. To the extent these documents are otherwise discoverable, they could and should have been obtained pursuant to Rule 34 . . . without imposing wholly unnecessary burdens on [non-parties]." *Id.* at *8. Such is not the case here, where Fractus has timely sought the same discovery from the Carrier Defendants, and has reported discrepancies across the productions by Amphenol and these defendants in response to similar document demands. Further, in *N'Diaye*

and the other cases cited, the collaborative relationship between the nonparty and the defendant in the underlying action was far afield from that alleged here, in which Fractus's claims in effect implicate Amphenol in the manufacture of infringing products. *See id.* at *8 (quashing subpoena for data about defendant employer's termination report from nonparty physicians who reviewed plaintiff's medical records in connection with the report); *Roth v. Cty. of Nassau*, 16-CV-6358 (LDW) (AYS), 2017 WL 75753, at *6 (E.D.N.Y. Jan. 6, 2017) (quashing subpoena of nonparty as to documents relating to plaintiff's "current compensation and benefit information" in disability discrimination action where such records could be requested from plaintiff); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena of nonparty to underlying patent infringement action where nonparty was an alleged bidder to purchase shares of largest shareholder of one of the defendants).

Accordingly, the Court finds that the March 4, 2019 Subpoena does not impose an undue burden on Amphenol.

## CONCLUSION

For the foregoing reasons, Amphenol's motion to quash the March 4, 2019 Subpoena is denied, and Fractus's cross-motion to compel compliance with the March 4, 2019 Subpoena is granted. The Court is mindful that fact discovery has closed, and also that the Eastern District of Texas is aware of the discovery sought by Fractus here and in other districts. Subject to any orders by the Eastern District of Texas modifying this schedule, the Court directs that Amphenol produce the requested documents and identify a deponent within the next two weeks, with the deposition to be held within the next three weeks.

As to the March 26, 2019 Subpoenas, the Court holds the motions in abeyance pending

resolution of the earlier-filed action in the District of Connecticut. The parties are instructed to

promptly notify the Court of any decision issued in that case.

The Clerk of Court is respectfully requested to terminate the motions pending at Dkts. 9

and 21.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 19, 2019
New York, New York